## ELI WHEELOCK *versus* CHESTER FREEMAN.

A bargain was made between the plaintiff and the defendant, for the purchase of land, for which the defendant was to pay a certain price, one half in stock at the end of one year if the plaintiff should choose then to take stock, otherwise the whole in cash at the end of two years; and at the same time two notes were written on one paper, each for half the price, payable to the plaintiff or order, on demand with interest, but the defendant objecting that they were not drawn according to the bargain, a memorandum was written on the paper substantially according to the bargain, and then the defendant signed the notes. The plaintiff refused to take stock, and a short time before the end of the two years he cut off the memorandum, and brought actions upon the notes, in which he became nonsuit, and after the two years had expired he brought another action, declaring upon the notes and upon the original parol promise. It was *held*, that cutting off the memorandum was a material alteration of the notes, and that the plaintiff therefore could not recover on the notes, and that he could not recover on an original parol promise to pay the purchase money, because that was merged in the written promise.

ASSUMPSIT. Upon a case stated it appears, that about December 1, 1828, a bargain was made between the plaintiff and the defendant, for the purchase of a parcel of land, for which the defendant was to pay the plaintiff $178·78, in manner following, viz. one half in stock at the end of one year, if the plaintiff should choose then to take stock, otherwise the whole in cash at the end of two years. At the above-mentioned date, two notes, each for $89·39, were prepared by the plaintiff for the defendant to sign, which were made payable to Wheelock or order, on demand, with interest. The notes were both on one piece of paper, and the defendant objected to signing them, as not being made according to the agreement, and a memorandum was then added upon the bottom of the paper, which memorandum was substantially according to the terms of the agreement, and then the defendant signed the notes. A short time before the expiration of the first year, the defendant offered to pay in stock one half of the price of the land, and the plaintiff then refused to accept stock in payment. The defendant has paid a little more than the first year's interest upon the notes. Before the expiration of the two years the plaintiff cut off the memorandum from the notes and commenced actions upon them, in which he afterwards became nonsuit. After the expiration of the two years he commenced the present action ; in which

he declared upon the agreement above described, upon a sale of the land and a promise to pay the price in two years, and upon the two promissory notes. And if upon any of the counts, with the evidence as above stated upon one side and the ɩther, the plaintiff was entitled to recover, the defendant was to be defaulted; otherwise the plaintiff was to be non-suited.

*Oct. 6th*

J. *Davis*, *Washburn* and *Hyde*, for the defendant, contended that the notes were given in full discharge of the original contract for the land; *Whitcomb* v. *Williams*, 4 Pick. 231; *Maneely* v. *M'Gee*, 6 Mass. R. 143; *Thacher* v. *Dinsmore*, 5 Mass. R. 302; that the notes (one of them certainly) were negotiable, notwithstanding the memorandum, which was a part of them; Bayley on Bills, 1; 3 Kent's Com. 46; that cutting off the memorandum was a fraudulent alteration, which rendered the notes void; *Pigot's case*, 11 Co. Rep. 28; Bayley on Bills, 59; *Homer* v. *Wallis*, 11 Mass. R. 309; *Master* v. *Miller*, 4 T. R. 320; *Hatch* v. *Hatch*, 9 Mass. R. 311; and that the plaintiff having thus rendered the express written promise void, he could not recover on an implied promise to pay for the land. *Toussaint* v. *Martinnant*, 2 T. R. 104; Chit. Contr. 6; *Master* v. *Miller*, 4 T. R. 329, 345; *Martendale* v. *Follet*, 1 N. Hampsh. R. 95; *Gibbs* v. *Bryant*, 1 Pick. 118.

*Merrick*, *Kinnicut* and *Bliss*, for the plaintiff, said that the memorandum was contradictory to the notes, and it must be regarded as an independent, collateral agreement; *Dow* v. *Tuttle*, 4 Mass. R. 414; *Ward* v. *Winship*, 12 Mass. R. 481; *Shed* v. *Pierce*, 17 Mass. R. 623; but that if it was a part of the notes, then the notes were not negotiable; *Martin* v. *Chauntry*, 2 Str. 1271; Bul. N. P. 272; *Roberts* v. *Peake*, 1 Burr. 323; *Beardesley* v. *Baldwin*, 2 Str. 1151; *Morris* v. *Lee*, 2 Ld. Raym. 1396; and not being negotiable, the plaintiff might sue on the original express verbal contract, for the original consideration; *Maneely* v. *M'Gee*, 6 Mass. R. 143; *Greenwood* v. *Curtis*, ibid. 358; and that in cases in which a contract has been defeated by an alteration, the written contract was the original contract, or the verbal contract had merged in the written one. *Master* v. *Miller*,

4 T. R. 320 ; *Farr* v. *Price*, 1 East, 58 ; *Powell* v. *Divett*, 15 East, 29.

<div style="float:right">Wheelock<br>*v.*<br>Freeman.<br>*Oct. 9th.*</div>

Shaw C. J. delivered the opinion of the Court. It is an established rule of law, that where, upon the sale of property, the performance of service, or any other transaction, the parties make an express contract for themselves, the law will not raise a promise by implication. *Toussaint* v. *Martinnant*, 2 T. R. 100. But here we understand the plaintiff to admit this principle, and to proceed upon the ground of an express promise made by the defendant, that upon the execution of the deed, he would pay the plaintiff the stipulated price, in cash or in stock, according to the terms of their bargain, that the notes were given as security for the performance of that promise, and if from any cause, the notes proved unavailable, he had a right to recover upon this original express promise. But we think this, in several respects, a mistaken view of the case. There must always be a bargain by parol, upon which the sale of real estate is made, as well as in other contracts to be perfected by deed ; but it is inchoate and incomplete, until the execution of the deed. It is unnecessary to rely on the rule of statute law, that all contracts and agreements for the sale of land must be in writing, because in all cases where the parties enter into a negotiation for the sale and purchase of real estate, they know and understand that it is to be consummated by the execution of a deed. Such negotiation and parol agreement, does not change the rights of the parties until the deed is executed ; it is that which consummates and carries into effect the agreement of the parties, and vests in them new rights. The transfer of the estate on the one side, and making payment or giving security on the other, are embraced in such agreement and constitute parts of one and the same transaction. Now it is a well settled rule, that all the different parts of the transaction, without regard to the order in which the securities or documents are executed, shall take effect simultaneously, or in such order as shall most effectually execute the intent of the parties, in the whole transaction. The right to the debt would no more arise without the notes, than the right to the land without the deed. There were not two distinct debts, one arising upon the parol bargain which

was discharged by the notes, and another upon the notes. The consideration for the land was the express promise, of which the notes were the evidence, and then the well known rules apply, that when there is an express promise, the law implies none, and when the evidence of a contract is in writing, it must be produced at the trial. To say that before and independently of the alteration of the notes, the plaintiff could recover, would be to hold that in all cases where, upon a sale of property or other negotiation, a party has promised to pay money, and given his note at the time in conformity with such promise, the holder may still waive the note and sue on such original express parol promise.

If it is said that he is remitted to this right, in consequence of the notes having become void by the alteration, so that the plaintiff cannot recover on them, this is to hold, that a party can acquire a right of action by his own fraudulent act, in altering his security, to the injury of the other party, an act which the law thus deems fraudulent and in consequence thereof holds the note void, because it tends to the injury of the other party.

If the plaintiff claims upon the notes, he is not entitled to recover, because he has made a material alteration in the notes since they were signed. *Master* v. *Miller*, 4 T. R. 320. That it was fraudulent is a conclusion of law from the fact, that it was done willfully, for his own benefit and to the injury of the defendant, by accelerating the payment. It has been made a question, whether the alteration was material. This is easily tested by inquiring whether the notes would have the same legal effect and operation after the alteration as before. After the alteration they were payable on demand; before it, on time. The difference is apparent. And so the parties understood it. When written " on demand," the defendant refused to sign them, and only consented to do so, after the qualifying memorandum was made. But there is no magic in the word *memorandum*. And it has often been decided, that any words written on an instrument which qualify and restrain its operation, constitute a part of the contract. *Jones* v. *Fales*, 4 Mass. R. 245, where the words " foreign bills " written in the margin of the note, were held to be part

of the contract. *Springfield Bank* v. *Merrick*, 14 Mass. R. 322 ; *Homer* v. *Wallis*, 11 Mass. R. 309 ; *Heywood* v. *Perrin*, 10 Pick. 228.

The memorandum in the present case had none of the characteristics of a separate, independent and collateral agreement, as in the case of *Dow* v. *Tuttle*, 4 Mass. R. 414, but constituted one of the material stipulations of the contract when it was executed.

*Plaintiff nonsuit.*