## SANDERS v. BAGWELL.

1. NEW TRIAL—JUDGMENT OF SUPREME COURT.—A judgment of the Supreme Court reversing a judgment of the Circuit Court, places the parties in the same condition they were in before the first trial as to all matters not determined on the appeal; and the judgment of the Supreme Court controls without pleading it or offering it in evidence.

2. EVIDENCE—PARTY DECEASED.—In action against an administrator, a witness is not incompetent to testify in behalf of plaintiff to transactions with the deceased, under section 400 of the Code, by reason of the interest of his wife and children in the recovery.

3. EVIDENCE—PRACTICE.—An exception cannot be predicated on an objection interposed to a question to a witness after it was answered, where no motion was made to strike out, and the trial judge properly guarded the jury against its influence.

4. TRIAL JUDGE—EXAMINATION OF WITNESS.—A trial judge may properly refresh his memory as to the testimony by interrogating a witness while on the stand as to the statement he had made on a point in issue, and also may ask of him a question which bears directly upon the subject-matter of his pending examination.

5. CHARGING JURIES—FORMER DECISION.—If the trial judge correctly charged the jury in accordance with the rulings of the Supreme Court on an appeal from a former judgment in the cause, it is sufficient, without using the exact language of the appeal decision.

6. IBID.—FACTS.—The charge in this case properly submitted all questions of fact to the jury.

7. ALTERATION OF NOTE—ESTOPPEL—STATUTE OF FRAUDS.—Where a surety stands by, and by his silence and conduct induces a borrower to part with his money on the faith of the surety's approval of an alteration by the principal of the rate of interest stipulated in the note, he cannot after-

wards rely upon such alteration as a discharge of his liability. And to such case, the statute of frauds has no application.

8. AN EXCEPTION pointing out errors only by reference to folios of the "Case," considered *ex gratia*.

9. ALTERATION OF NOTES—PLEADINGS—JUDGMENT.—The plaintiffs sued the surety on a note, and demanded judgment for principal and seven per cent. interest. The defendant claimed a release by reason of an alteration in the note sued on. It appeared that the alteration was an increase in the rate of interest, but was made under circumstances which prevented it from operating to discharge the surety. *Held,* that the alteration did not make a new contract, but that plaintiff, not having asked for an amendment of his complaint, was entitled to recover only seven per cent. interest.

10. CORRECTION OF VERDICT.—There is no error in permitting a jury to retire to their room after verdict published, in order to make such a correction in their calculation of interest as will make their verdict conform to their intention.

11. NEW TRIAL NISI granted by the Supreme Court.

12. PETITION FOR REHEARING refused.

Before KERSHAW, J., Spartanburg, July, 1891.

Action by C. P. Sanders, as executor of Allie Lipscomb, against S. M. Bagwell, administrator of W. H. Bagwell, commenced in April, 1888. The trial judge refused the requests to charge, as stated in the exceptions, and charged as follows:

*Gentlemen of the Jury:* The plaintiff in this action claims the right to recover the balance due on a sealed note, which the evidence tends to show was made to Allie Lipscomb on the 22d of October, 1873, for $440, with an *addendum* or alteration, written below the note, to this effect: "The above note is to be accounted for, with interest at eight per cent. per annum. (Signed) Wash. Poole." He claims to recover the balance due on the note, calculating interest at eight per cent. per annum. The evidence tends to show that Wash. Poole was the principal in this note, and W. H. Bagwell the surety. This alteration or addition to the note in question has already been judicially passed upon by the Supreme Court, if I understand it; and they have declared that it is an alteration of the note, and it is just the same as if the note had been altered by inserting those words in the note, interlining them. On the one hand, it is claimed here by the plaintiff that, although this *adden-*

*dum* here, this alteration, was made and signed by Wash. Poole, the principal in the transaction, yet he says that the evidence shows that Bagwell was consenting to that alteration, and that, therefore, he is as much bound as Poole ; whereas the defendant says that Bagwell did not consent to that alteration, but that it was an alteration made by Poole, by which he bound himself, but not his surety ; that, by writing that alteration to the note, the security was discharged.   Those are legal questions, most of them, but what the evidence proves is for you.

Now, one of the first questions is, if that note was altered in that way by Wash. Poole, was it done by the consent of the surety, Mr. W. H. Bagwell?   If it was done with the consent of Bagwell, he is bound by it, and must answer as if the note had been originally written at eight per cent. per annum.   But if it was done without his consent, there is another principle of law which may apply to the transaction.   If it was done in his presence, and done for the purpose of making the note come up to the requirements of this old lady, Mrs. Lipscomb, and if they knew, Bagwell and Poole, that they could not get the money without that alteration, and Poole sat down and said, "I will alter it," and he altered it in that way, and Bagwell stood by, and did nothing and said nothing, knowing that the money could not be got without that alteration, and the money was paid only after this alteration, which he stood by and made no objection to, if you think that the circumstances were such as that Mr. Ross, the agent of Mrs. Lipscomb, had a right to believe that Bagwell consented to the alteration, and Bagwell knew he was acting under that belief, and Bagwell did not repudiate the transaction, and said nothing, why, he is estopped—he cannot claim now that he did not consent.

It is not necessary that he should have consented in words, if he acted in such a way as to entrap Ross into the belief that he was consenting to the change.   It is a question of good faith.   You cannot act in such a way as to deceive a man and induce him to believe a thing, and act upon that thing which your conduct induced him to believe, and then claim that you are not bound by it.   If I have money to lend, and lend at eight per cent., and I tell you that I wont lend it except upon

eight per cent., and then you stand by and let a man alter your note to make it conform to eight per cent., and then you get the money on that, it don't lie in your mouth evermore to say that you did not consent to it, if you stood and did not say anything, and then say, "I will not be bound by that." Good faith requires that in this transaction.   But if you are not satisfied by the testimony for the plaintiff that Bagwell was present, and that he did act in such a way as to make Ross believe that he had given his consent to that transaction, then Bagwell would not be bound by it, and the plaintiff could not recover against Bagwell at all.

And now I will charge you, in the language of certain requests to charge made by the plaintiff, as follows : "I charge you that the alteration of the note sued on will not release the surety, if it was made with his consent, either express or implied."   I charge you that consent may be inferred from conduct, or from silence when one ought to speak, and consent so given is as binding and effectual as if directly and positively expressed.   If a man, either by words or by conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they may have otherwise abstained, he cannot question the legality of the act he has so sanctioned, to the prejudice of those who have so given faith to his word, or to the fair inference to be drawn from his conduct.   If the defendant's intestate was present, and heard Ross, as the agent of Mrs. Lipscomb, refuse to take the note unless it was drawn so as to bear eight per cent. interest, and heard Poole say that he would change it, and saw him do it, it was his duty to object if he did not consent.   And if he stood silently by and saw Ross pay the money to Poole, if Ross was led by his silence to believe that he consented to what had been done, the defendant is estopped to deny that the alteration was made with the consent of his intestate.   I think that is good law, gentlemen.

The defendant, upon the other hand, has asked me to charge a good many propositions, and I find upon examining them

only one that I can agree to, and that is the third: "If the payee of the note, at any time after its execution, made a contract with the principal, extending the time of payment, the surety was thereby released." If it was proved to your satisfaction that there was an agreement between Mrs. Lipscomb and Mr. Bagwell that the time of payment of the note should be extended, and that agreement was a valid and lawful agreement, binding upon Mrs. Lipscomb, then that would release the security. But the mere payment of a sum of money on the note, the effect of which was to relieve the transaction from the bar of the statute of limitations, would not relieve such an agreement as that. It must be to extend the time within which the money is to be paid, and an agreement which would prevent the party holding the note from bringing the suit and enforcing the contract. The law will release a security on a note in regard to which such an agreement is made; but that is not to be found in the endorsement of a simple receipt upon a note. The thing which an endorsement of a receipt on a note proves is that so much money was paid upon the note at that time, unless there is something else to show that there was some other contract.

You will take the record and the note, and find a verdict; if for the plaintiff, for the balance due on the note, allowing the credits. You will allow all the credits, and calculate the interest at eight per cent., and write a verdict for the plaintiff, if you find for the plaintiff. But if you find for the defendant, you will simply write, we find for defendant, without more. You will make the calculations, if you find for the plaintiff, on the basis of a note at eight per cent. for the time that that note was due, and allow credits at the time when they are credited there or when the amounts were paid.

Verdict was for plaintiff, and defendant appealed.

*Messrs. Bomar & Simpson* and *Johnson & Thomason,* for appellant.

*Messrs. Carlisle & Hydrick,* contra.

September 17, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. In the thirty-second volume of the South Carolina Reports, at pages 238 to 243 inclusive, may be found the report of the first trial of this case, and the judgment of this court on the appeal therein. Briefly, the plaintiff complained on a note for $440, executed under seal by Wash. Poole, and W. H. Bagwell as his surety. There had been an *addendum* thereto, signed by Poole alone, whereby the interest to be paid was fixed at eight per cent. per annum, and the fact of the alteration was set out in the defendant's answer. At the hearing the Circuit Judge held that such *addendum* was a *nudum pactum*, and did not influence Bagwell's (the surety's) liability thereon. On appeal, this court held that such *addendum* became a part of the contract evidenced by the note, as much so as if the same had been interlined therein, and reversed the judgment of the Circuit Court in favor of the plaintiff.

The parties being already at issue under the original pleadings, the cause came on for a trial before Judge Kershaw and a jury, on the 17th August, 1891, at a regular term of the Court of Common Pleas for Spartanburg, when the plaintiff obtained a verdict for $811.90, and judgment being entered thereon, an appeal was taken therefrom on many and various grounds.

The first objection of appellant, in the logical order, relates to the fact of any trial at all being had of the action after the judgment of this court reversing the first trial, being the 8th ground of appeal. The effect of the judgment of this court simply reversing the first judgment in the Circuit Court placed the parties litigant in the same plight and condition they had been in before any trial of the action, with this restriction—that they could not again litigate the same matters that had been passed upon by this court, as evidenced by the opinion of the court accompanying its judgment. It may be as well to state in this connection, in answer to so much of the respondent's position, "that the judgment of the Supreme Court on the first appeal was neither pleaded nor put in evidence," that it was not necessary to either plead or put such judgment in evidence. All parties were bound at their peril to give such judgment, in the identical action, between the

same parties, with the same attorneys, instant and continued recognition and obedience. There was no error here.

The next question suggested by the appeal here relates to the admission of the testimony of the witness Ross:

"*a.* In overruling defendant's objection to Ross's testimony as to what took place between him and W. H. Bagwell." It seems that Bagwell was Poole's surety; that when Ross, as the agent of his mother-in-law, Allie Lipscomb, brought the $440 of her money to Spartanburg C. H. to lend to Wash. Poole, with Bagwell as his surety, he was directed by Mrs. Lipscomb to loan them the money at eight per cent. interest, but that when he met Poole and Bagwell, the note offered by them was silent as to the rate of interest, and that he declined to receive the note or pay over the money, calling their attention to this defect in the note. Poole at once said, "We can soon fix that;" and thereupon the three men walked into Maj. Lee's office, and, in the presence of all three, Poole wrote as the *addendum* to the note: "The above note is to be accounted for with interest at eight per cent. per annum. Wash. Poole." Mrs. Lipscomb is dead, and the plaintiff, C. P. Sanders, is the sole executor of her will. W. H. Bagwell is dead, and S. M. Bagwell, the defendant, is the administrator of his estate. The ground advanced at the trial, why Ross should not testify, was because "he was interested in the event of the suit." Upon an examination of the will and the codicil thereto of Mrs. Allie Lipscomb, it was discovered that the witness was not pecuniarily interested in her estate, although witness's wife and children were so interested. This was the conclusion of the Circuit Judge, reached after an inspection of the will and codicil. The appellant does not embrace copies of those papers in the "Case" here. We are powerless to pass upon the papers in question. The conclusion of the Circuit Judge is assumed to be correct; this course is necessary because of appellant's failure in his "Case." And we must, therefore, overrule this objection.

"*b.* [In ruling that the following testimony was competent:] If he (Bagwell) had objected, would you have paid the money?" To see the pertinency of this testimony, it will be neces-

sary to recall some of the facts. Ross, as the agent, had instructions to loan his principal's money to Pool, with Bagwell as surety; the note, as offered, specifying no rate of interest, was rejected by the agent on that account. Then Poole said : "We will fix that." All three were together when the *addendum* was made to the note by Poole; Bagwell said nothing. The witness was then asked if Bagwell had objected to this change, "would you have paid the money?" The witness said he would not. The objection was made, as appears by the "Case," after the witness had answered the question. No motion was made to expunge the testimony. The judge made no ruling, and if we were left to conjecture, we might suppose the objection was not pressed ; but we think that the "Case" itself discloses that the Circuit Judge protected the defendant from any ill results that might flow from this answer of the witness Ross, by ruling thus : "Upon that point, all that is proper is to show what the parties did, and I do not think it is necessary that you should bring out his impressions, because his impressions are not to bind the jury in this case at all."

"*c.* In himself (the judge) asking the witness what his instructions from Mrs. Lipscomb were." Really, we are at a loss to appreciate the force of this implied criticism of the conduct of the presiding judge. The witness had already testified what his instructions from his principal were without objection. Judge Kershaw seemed to wish to have his own memory freshened on this matter, and hence he asked the witness, in effect, to repeat his testimony on this point. While the practice of the trial judge, taking the examination of a witness into his own hands, is not to be commended or approved, it is a matter of every-day experience in our courts for the trial judge to ask a witness a question. When it is realized what a great responsibility is devolved upon a Circuit Judge in seeing that justice is properly administered in the court, some latitude must, of necessity, be accorded him.

"*d.* In asking the witness this question, 'You know whether or not you were induced by that act to pay the money?' after witness had just stated that he could only give the circumstances, and, as he did pay the money afterwards, that must

have been his inference." The objection here presented must
be overruled. The "Case" brings the scene in the court room
very distinctly to the eye. The witness Ross had detailed his
instructions time and again, his refusal to turn over the money
until the eight per cent. interest was provided for in the note ;
that he, Poole, and Bagwell were not attended by any one else ;
that the note was changed in his presence, and in the presence
of each one of the three ; that, while Bagwell said nothing, he
acted in conjunction with Poole ; and that, by reason thereof,
he, Ross, paid over the money. These answers had all been
given by Ross in the course of his direct examination, and yet,
when plaintiff's counsel asked the question whether that is the
truth, the witness replied : "I have stated that we went back
in there after seeing this note, and I don't know whether Mr.
Bagwell said anything. I couldn't say ; I just give you the
circumstances as I remember. I did pay the money afterwards,
and that must have been my inference." The presiding judge
then remarked : "You know whether or not you were induced
by that act to pay the money." This remark of the judge was
intended to bring the witness directly to the matter, and to end
what seemed to be a useless consumption of time. This court
cannot view the action of the trial judge with disapproval.

The next question to be considered is, whether any or all of the
instructions of the Circuit Judge to the jury, complained of by
the appellant, constitute error. The second ground of
appeal is : "Because his honor, Judge Kershaw, erred in
charging the jury that the Supreme Court had decided
that the addition of the words below the note had been inserted
in the body of the note without giving the qualification clearly
expressed in the opinion of the Supreme Court, 'so far as Poole
could make it so.' " The very paper submitted showed that
Wash. Poole alone had signed it ; that Bagwell did not
sign it. Of this fact there has never been any question. The
Circuit Judge was instructing the jury as to the effect of such
*addendum* to the note in question, under the decision of the
Supreme Court—that such *addendum* was to be considered as
an alteration in a material point of the note in question. It
was not necessary for the trial judge to repeat the exact words

that occurred in the text of the decision, provided, always, that he preserved the effect of such decision. The whole charge of the judge shows that he fairly presented to the jury the true question involved in the second trial, namely, whether Bagwell, the surety, not having written his name to the *addendum*, and not having uttered any words in relation to such *addendum*, was estopped by his conduct on the occasion when the *addendum* was penned and the money paid immediately thereafter, from denying his assent thereto. This being so, as appears by the charge of the judge, we see no error here.

The third ground of appeal is: "In charging the jury, in substance, that Bagwell was estopped by his silence from taking the position that the change in the note released him, and that good faith required that he be bound in this transaction, thus violating art. IV., sec. 26, of the Constitution." By a careful examination of the "Case," it will be seen that the Circuit Judge did not assume to pass upon the facts; he left that work, where it belonged, to the jury. All that he did was to announce what he conceived to be the rule of law applying to a set of facts to be determined by the jury. This is the province of the judge. From him the jury must take the law, and if he makes a mistake, this court may be invoked to correct him. The correctness of the principle of law we will discuss hereinafter. We must overrule this objection.

The fourth, seventh, and ninth exceptions will be considered together, and are as follows: 4. "In charging that it was not necessary that Bagwell should have consented in words to the change in the note to be bound by it, but his silence was enough—thus depriving the jury of the right to draw the distinction between a negative consent, inferred from mere silence, for Poole to be bound by the new part of the contract, and an active consent, to be bound himself by such new contract—such consent as might have been evidenced by his signing such agreement." 7. "In charging the jury that Bagwell, the surety, could be bound (by) implied consent, through silence, to pay the new eight per cent. contract of Poole, the principal, in the face of the provision of the statute of frauds, that no promise to pay the debt of another is binding unless in writing."

9. "In refusing to charge, as requested : 'It being proven that the note in controversy was altered after being signed, the surety was released by such alteration, unless he actively consented to such alteration, and agreed to become bound by its terms, and this the plaintiff must show.' "

The main question involved in these grounds of appeal relates to the effect in law of a certain line of human conduct, and, as far as it is practicable, we will endeavor to meet the issue fairly and fully. But, before announcing our conclusion, it is proper to be observed that the Circuit Judge, in his charge to the jury, did not confine his utterances to the single phase of Bagwell's conduct, the *silence* maintained by him when his principal, Poole, wrote and signed the *addendum*, but he included, also, his other conduct during the entire transaction. It is true that the Circuit Judge did comment upon Bagwell's *silence* itself, yet the whole of the charge shows that he impressed upon the jury how the law would regard the other elements that made up the *conduct* of Bagwell on the occasion referred to.

In all human transactions the element of good faith is anxiously looked for and imperatively demanded in a judgment of approval. The maxim that "silence is golden" is not accepted in the law, if it is the duty of man to speak. If a man knows of a defect, and remains silent, so that he thereby imposes upon his fellow-man, the law does not approve of such silence. If a man with a secret interest in property attends the sale thereof, whereby it is announced that the purchaser at such sale will receive good title to the thing sold, and after the sale is made, such person holding a secret *bona fide* interest in the article of property so sold, attempts to assert his interest, the law views his conduct with disapproval. When a man who holds the money of another for investment on certain terms that are made known to the parties seeking the loan of such funds, and when a note is presented to evidence the terms of the loan, and the agent discovers that the note is not in accordance with the terms of such investment, and makes known wherein such note is defective, and declines to accept such note or part with the money, until there is a compliance with the terms in question, and thereupon one of the proposed borrow-

ers says, "*We* will fix that," and both principal and surety thereupon go with the agent into a private place or office, where the principal writes a compliance, and the surety says nothing, and the agent then accepts the note and pays over the money, can the personal representative of the surety, who dies after the transaction and before action brought on such contract, altered as it was, successfully interpose the defence in such suit, that his intestate (the surety Bagwell here) was released from such contract by such alteration? We think not. We feel that the Circuit Judge was right when in his charge he said: "It is a question of good faith, gentlemen. You cannot act in such a way as to deceive a man, and induce him to believe a thing, and act upon that thing which your conduct induced him to believe, and then claim you are not bound by it." Nor can the statute of frauds be invoked to protect such wrong doing. Very fortunately, the note in question was signed by the surety, and the alteration of the note so written and signed by him was made in his presence virtually by his agent duly authorized thereunto. We must overrule these exceptions also.

The fifth ground of appeal is: "In charging and ruling on the facts, and indicating to the jury by said charge and rulings his opinions of the facts of the case, as will appear at 6, 8 folios 25, 26, 51 to 54." The appellant is not entitled to have this court to pass upon these matters, if we were strict in our adhesion to the rules regulating counsel in the presentation of matters to this court on appeal; for he has not set out in his exception here referred to the substance of the matters complained of, but has simply referred to the folios in the case, where they may be found. This is not correct practice, and we have felt it our duty to say so. Still we are unwilling to seem, even, to avoid any labor that justice may require at our hands, and have carefully considered this complaint of the appellant. Upon an examination of the "Case," we find that the Circuit Judge was careful to admonish the jury that "what the evidence proves is for you." At folios 25, 26, the Circuit Judge, in deciding that certain questions could not be asked by the plaintiff, stated in what form the questions could be asked. Then, at folios 51 to 54, the Circuit Judge stated the effect of

the testimony hypothetically : "*If* you should find, &c." "*If it was done, &c.*" "It is not necessary that he should have consented in words, *if* he acted in such a way, &c." "*If* the note was altered, &c." We are at a loss to understand how the Circuit Judge could convey his rulings upon the questions submitted, except he stated the effect of the testimony hypothetically. We must overrule this exception.

We will now consider the question raised by the sixth, tenth, and eleventh exceptions : 6. "In charging the jury, in case they should find for plaintiff, to calculate the interest at eight per cent., under the contract as altered, when plaintiff had not asked any such judgment, but had sued on the old seven per cent. contract." 10. "In refusing to charge as requested : 'Plaintiff cannot recover in this case on the note sued on, because the proof shows that said note has been altered, and there is now no such note. Nor can he recover on the new contract, because he has not sued on said new contract.'" 11. "In refusing to charge as requested : 'If plaintiff seeks to recover on the eight per cent. contract, such agreement, so far as the change of interest is concerned, is not a sealed instrument, and is barred by the statute of limitations.'"

It may be as well to state frankly that we do not perceive, under the proofs here, what may be technically called a new contract. It is true, it is sought by the *addendum,* written at the foot of the note, to enlarge the interest from seven per cent. to eight per cent. per annum, and this court has decided that such act was an alteration of the contract as first stated. Would it be true that the addition of a "wing" to a dwelling-house made it, so to speak, a new house? We have no difficulty, so far as this phase of the question here raised is concerned. In order for the plaintiff to avail himself, in his judgment on the note of the increased rate of interest from seven to eight per cent., he should have amended his complaint. It is not true that the defendant pleaded in his answer the terms of the alteration of the contract. The answer avoids setting up this writing itself; it only seeks advantage from the fact of an alteration of the contract in a material point of view. Such being the case, we fear that the plaintiff must suffer a

diminution to this extent in the amount of his verdict. In reaching our conclusion we are not unmindful of the liberal provisions of our Code in the matter of amendments. And at one time during this investigation it was supposed that section 191 might assist the respondent, inasmuch as the testimony at the trial that was not objected to seemed to establish eight per cent. as the interest that was agreed upon, and that, under that section, it is the duty of the court to disregard the variance as immaterial, and either to order an immediate amendment or to direct the fact to be found according to the evidence. Upon reflection, however, the conclusion was reached that the testimony at the hearing in the court below was directed to establish that the *addendum* was made with the full knowledge and approval of Bagwell, the surety, and this idea is not necessarily inclusive of that of an increase of interest in the judgment asked for in the complaint. The interest should be reduced, in order that the issue, as found, should be responsive to the issue as alleged in the pleadings. We can see (of course, not in this case,) that for this court to hold a formal amendment or an actual amendment of the complaint unnecessary, might lead to great carelessness in pleading, and we would not willingly lend ourselves to contributing to such a result.

Lastly, we will dispose of the twelfth ground of appeal, which is: "Because the Circuit Judge erred in setting aside the first verdict rendered, and allowing a new verdict to be found by the jury, without having a new trial of the case."

The case states this matter as follows: "The clerk, after reading the title of the cause, read the verdict, which was as follows: 'We find for the plaintiff $709 dollars. J. W. Wofford, foreman.' Immediately after the reading of this verdict by the clerk, and before any thing else was done, the attorney for the plaintiff stated to the court that the jury had evidently made a mistake in the calculation by which the amount of the verdict was reached. His honor, the presiding judge, then asked the jury if they intended to find for the plaintiff the full amount of the note, with interest at eight per cent. per annum, less the credits which had been proven and admitted. The foreman replied that that was the intention of the jury. His honor then

said to the jury, that, inasmuch as it had been suggested to the court that there was an error in the calculation by which the amount found had been reached, they might retire to their room again and make another calculation on the basis on which they intended to find their verdict, and if upon such new calculation they find they had made a mistake, they might correct it." The jury availed themselves of the opportunity to correct their error of calculation, and returned with a verdict for $811.90. All this was done in the presence of attorneys for each side respectively, and without objection expressed to the court.

We have thus carefully stated from the "Case" itself the facts in the language there employed. The statement refutes the objection. The action of the presiding judge was perfectly correct. *Harley* v. *Neilson,* 1 Rich., 483; *Gatewood* v. *Moses,* 5 *Id.,* 247; where the court said: "As to the remodeling the verdict by sending the jury back, or having it written according to the intention of the jury, in the court room, there is nothing wrong. The course pursued by the judge is in exact conformity to the practice which we all pursue, and which our predecessors pursued from the earliest days of the administration of justice of which we have any knowledge." We, therefore, overrule this ground of appeal.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and the case remanded to that court for a new trial, unless the plaintiff shall, within ten days after written notice of this judgment, remit upon the record in the circuit $102.90 of the recovery, in which event the judgment of this court is that the judgment of the Circuit Court, so reduced in amount, be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE McIVER, *concurring in the result.* The former decision in this case must be regarded as finally determining: 1st. That the *addendum* to the note amounted to an alteration of the note in a material respect—it being the same, in effect, as if the words of the *addendum* had been incorporated, by interlineation, in the body of the note. 2d. That such an

alteration would release the surety, unless he had consented thereto. So that when the former judgment was reversed, the only question remaining open was whether the surety had consented to such alteration. If he had, then plaintiff was entitled to judgment; otherwise, the verdict should be in favor of the defendant. This question of fact—whether the surety had consented to the alteration—was left to the jury under what, I think, were proper instructions, as shown in the opinion of Mr. Justice Pope; and their verdict must be regarded as determining this question in favor of the plaintiff, who was, therefore, entitled to judgment—but for what amount? Clearly for only such amount as was consistent with the case as made by the complaint, viz., for the balance due on the note, with interest at the rate of seven per cent., there being no allegation in the complaint which would entitle him to demand any greater rate of interest. See *Straub* v. *Screven*, 19 S. C., 450.

In this case a petition for a rehearing was filed by defendant and appellant, on the grounds (1) that the amount, $102.90, ordered to be remitted was not the true difference between interest at eight per cent., as found by the jury, and seven per cent., the correct interest, decided by the Supreme Court; (2) that the decision of this court did not fix the date at which the deduction should be made; (3) that this being a law case, this court had no jurisdiction to pass upon the several facts which were necessary to be determined in ascertaining the amount due on a calculation of seven per cent., no such facts having been passed upon in the court below; (4) that, as there was error in the court below, this court was bound to order a new trial, so that the facts could be passed upon by a new jury; and (5) that the case should have been sent back for an amendment of the complaint.

December 7, 1892, the following order was passed

PER CURIAM. After a careful consideration of this petition, we are unable to discover that any material fact or principle of law has been overlooked, and, therefore, there is no ground for a rehearing. If there is any error in the figures, it is due to the statements found in the "Case,"

as prepared for a hearing in this court, for which this court is not responsible. The only other matter which even seems to require attention is as to the date when the amount directed to be remitted shall be deducted. We do not see how such a question can be raised; for it is too plain for argument that the amount should be deducted as of the date of the judgment. The court, having discovered error in the judgment to the amount stated, simply ordered a new trial, unless the plaintiff should voluntarily correct such error, according to the practice which has obtained from time immemorial.