PATRICK BESTON & another *vs.* FRANCES A. AMADON.

Hampden.   September 28, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Contract — Married Woman — Agency — Estoppel — Promissory Note.*

In an action to recover the price of bricks used in erecting a building upon land of the defendant, it appeared that the bricks were ordered by the defendant's son in law, and that the defendant, her husband, her daughter, and her son in law

lived together on the place where the building was put up. There was evidence that the son in law hired the farm under an oral arrangement, but this was denied by the plaintiff. In April or May the son in law began building, having conveyed his personal property on the place to the defendant in January, and he went into insolvency in November, soon after the work was finished. The value of the work done was estimated by the plaintiff, an expert, at from ten to twelve thousand dollars. There was evidence that the defendant knew of the work while it was going on, and it was not disputed that some painting on the place was paid for by the defendant's husband, who was her general agent, with her money. *Held,* that, while the defendant introduced evidence tending the other way, the jury would be warranted in finding that the building was ordered by the defendant's authority.

The fact that a vendor took the note of a certain person when he supposed that he was dealing with him alone is not a bar to an action against a third person for the price of the merchandise, the note having been offered back.

CONTRACT, to recover the price of bricks used in building a greenhouse on land of the defendant. Trial in the Superior Court, before *Bond*, J., who directed the jury to return a verdict for the defendant; and the plaintiffs alleged exceptions. The facts appear in the opinion.

*J. B. Carroll & W. H. McClintock*, (*J. F. Stapleton, Jr.* with them,) for the plaintiffs.

*W. W. McClench*, for the defendant.

HOLMES, J. The bricks were ordered by one Cartter, the defendant's son in law. At the trial a verdict was directed for the defendant, we presume on the ground that there was no evidence that the defendant's son in law was her agent.

The defendant, her husband, her daughter, and her son in law lived together on the place where the greenhouse was put up. The defendant's evidence was that Cartter hired the farm at fifty dollars a month under some oral arrangement, but even this precarious tenure seems not to have been admitted by the plaintiffs. In April or May, 1895, Cartter began the greenhouse, having conveyed pretty much all the personal property which he used upon the place to the defendant in January, and going into insolvency in November, soon after the work was finished. The value of the work done that summer was estimated by the plaintiff, an expert, at from $10,000 to $12,000. There was evidence that the defendant knew of the work while it was going on, and it was not disputed that some painting on the place was paid for by the defendant's husband, who was her general agent, with her money. We are of opinion that on these

facts the jury would have been warranted in finding that the building was ordered by the defendant's authority. It is true that the defendant introduced evidence which tended the other way, but the jury might have preferred to disbelieve it rather than to suppose that the order was given by Cartter on his own behalf alone under circumstances where it would have looked very much like a deliberate fraud. In most of the cases like this which have been cited for the plaintiffs, the order was given by the husband of the owner of the place, and in some, not all, there was evidence that he was the general agent or manager for his wife. *Gannon* v. *Shepard,* 156 Mass. 355. *Dyer* v. *Swift,* 154 Mass. 159. *Jefferds* v. *Alvard,* 151 Mass. 94. *Wheaton* v. *Trimble,* 145 Mass. 345. *Arnold* v. *Spurr,* 130 Mass. 347. *Lovell* v. *Williams,* 125 Mass. 439. But in *Westgate* v. *Munroe,* 100 Mass. 227, the report of the judge stated that there was no evidence tending to show who employed or procured the services of the plaintiffs in making the repairs, yet the court, speaking through Mr. Justice Hoar, said that they entertained "no doubt that if a person, with the knowledge of the owner, performs valuable services upon the separate property of a married woman, it is evidence of an employment by her, and may authorize a jury to find a contract by her to pay for it." If in addition to the evidence in that case the name of a member of the household had been given as that of the person who gave the order, plainly it would not have changed the opinion of the court, nor could the result be affected if he and the alleged principal should unite in denying that he acted on the defendant's behalf. The jury might disbelieve their testimony, and draw the same inference that they would have had a right to draw if the interested evidence had not been given. *Dyer* v. *Swift,* and *Jefferds* v. *Alvard, ubi supra.*

It is not argued for the defendant that the fact that the plaintiffs took Cartter's note when they supposed they were dealing with him alone is a bar to this action. The note had been offered back. *Lovell* v. *Williams,* 125 Mass. 439.

*Exceptions sustained.*