GEORGE M. GRAY *v.* GILBERT WILLIAMS AND J. A. WILLIAMS.

November Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed January 7, 1917.

*Promissory Notes—Material Alterations—Validity of Altered Note—Reformation of Contract—Authorization or Consent of Maker—How Shown—Liability of Indorser—Ratification of Alteration—Questions for Jury.*

A material alteration in a promissory note, made and delivered before the Negotiable Instruments Act (No. 99, Acts 1912, Sec. 195) took effect, is one which makes the instrument speak a different language in legal effect from what it originally spoke; an alteration which produces some change or may in some event produce a change in the rights, interests and obligations of the parties to the instrument; or by which the instrument is made to cover a subject

matter greater, or less, or different, than that embraced in it before the alteration.

While a material alteration by one not a stranger to it will avoid the instrument though innocently made, the intention with which the change was made is important in determining whether in fact there was an alteration; for to effect the validity of the note there must have been present an intent to alter it.

The general rule is that if a memorandum written on an instrument in the margin or at the foot is made before or at the time of its execution, it is considered a part of it; and if it affects the operation of the terms of the body of the instrument, it is a material part of it. So that words written by a party upon the margin of an instrument after its execution and delivery constitute an alteration, if intended to affect the terms of the instrument, and they would have such effect if there when the instrument was executed.

Where the payee of a promissory note, made and delivered before the Negotiable Instruments Act (No. 99, Acts 1912, Sec. 95), wrote upon it after delivery a statement that it was given for the purchase price of a pair of horses and that title to the horses was not to pass until payment, with intent to change the note to a conditional sale, this was a material alteration and was destructive of its validity.

If a contract, as written, does not speak the actual agreement of the parties, one of them has no right to reform its language without the consent of the other, and unless the parties mutually agree to reform it, the aid of a court of equity must be invoked.

Whether the alteration of a promissory note is authorized, or consented to, or subsequently ratified by the maker and indorser, are questions of fact, and for the jury, if there is evidence fairly and reasonably tending to support them.

While authority to make an alteration in a promissory note is not presumed, and the authority to make such an alteration as is here appears will not be implied, assent thereto may be inferred from the circumstances and the facts proved.

Under the circumstances of this case, *held*, there was evidence from which the jury would be justified in inferring that there was a mutual understanding between the payee and maker that the note should be altered.

If a promissory note, made and delivered before the passage of the Negotiable Instruments Act (No. 99, Acts 1915), is materially al-

tered by the payee, with the consent of the maker, the liability of
an indorser thereon is terminated, unless the alteration is ratified
by him, intentionally and with full knowledge of the facts, and the
right to rely upon it as a defence to the note is thereby waived.

An alteration of an instrument is ratified if, with full knowledge of the
alteration, the instrument is subsequently recognized by the party
affected as valid, and such ratification may be implied as well as
express.

Speaking generally, any conduct on the part of the person affected,
with full knowledge of the facts, which shows an intention to
recognize the validity of the instrument as altered is sufficient
evidence to warrant the jury in finding a ratification, when the
instrument is not under seal.

When there was evidence, though contradicted, that the payee of a
note told the indorser of it of an alteration made by him and that
the indorser said he was pleased, that it protected him and that
he was glad the payee did it, the question of the indorser's rati-
fication of the alteration was for the jury.

ASSUMPSIT on a promissory note. Defendant Gilbert H.
Williams pleaded the general issue, with notice of the following
special matter in defence: That the note had been materially
altered by the plaintiff without the authority or approval of the
defendant. Defendant J. A. Williams also pleaded the general
issue, with notice of the following special matter in defence:
That he signed the note as indorser for defendant Gilbert H.
Williams, as plaintiff well knew, and that plaintiff had materially
altered the note without his consent and approval; and that he
was never notified that the note had been presented for payment
to the maker, and payment had been refused, and that plaintiff
would look to him for payment of the same. Trial by jury at the
December Term, 1913, Caledonia County, *Fish,* J., presiding.
Verdict ordered for defendants. Plaintiff excepted. The
opinion states the facts.

*Dunnett & Shields* for the plaintiff.

No alteration of the note is shown. There was no attempt
to change the note in any way. The words, if they had any
effect, amounted to a reserved lien on the property for which the

note was given, and were intended as a security for the note. They were no more a part of the note than would have been a mortgage on a piece of land written on a separate paper. *Bachellor* v. *Priest,* 12 Pick. (Mass.) 399.

If considered unauthorized, the words placed under the note should be held to be merely a memorandum, and as not affecting the validity of the note to the slightest degree. *Bachellor* v. *Priest, supra; Carr* v. *Welch,* 46 Ill. 88; *Maness* v. *Henry,* 96 Ala. 454, 11 So. 410; *First Nat. Bank* v. *Pritchard,* 2 Willson. Civ. Cas. Ct. App. Sec. 130; *King* v. *Edward Thompson Co.,* 104 N. E. 106; *Bank* v. *Bangs,* 42 Mo. 450, 97 Am. Dec. 349; *Pitt* v. *Little,* 58 Wash. 355, 108 Pac. 941; *Boston Sav. Bank & Tr. Co.* v. *Stephenson,* 87 Vt. 433; *Kime* v. *Jesse,* 52 Neb. 606, 72 N. W. 1050; *Powell* v. *Pearlstine,* 43 S. C. 403, 21 S. E. 328; 2 C. J. 1223, Sec. 90; *Culver* v. *Yocum,* 9 Ky. Law Rep. 148; *Derby* v. *Thrall,* 44 Vt. 413; *Canfield* v. *Orange,* (N. D.) 102 N. W. 313; *Fuller* v. *Green,* (Wis.) 54 Am. Rep. 600; *Milbery* v. *Storer,* (Me.) 46 Am. Rep. 361; 2 C. J. 1173.

The added words were placed on the instrument in good faith and do not constitute such an alteration as vitiates the instrument. *Wallace* v. *Tice,* 32 Oregon 283, 51 Pac. 733; *Nance* v. *Gray,* 143 Ala. 234, 38 So. 916.

If treated as an alteration, plaintiff was entitled to go to the jury on the question of whether the words added to the note were with the consent or ratification of the other parties. 2 C. J. 1294, secs. 221, 222, and cas. cit; 2 Am. & Eng. Ency. of Law (2nd ed.) 269, 270, and cas. cit. *Admrs. of Beaman* v. *Russell,* 20 Vt. 205; Randolph on Commercial Paper, vol. 3, sec. 1767.

*Porter, Witters* and *Harvey* for defendants.

A material alteration in an instrument is one which causes it to speak a language different in legal effect from what it originally spoke. Any alteration of a written contract which may in any event change the rights, duties or obligations of the party sought to be changed is material, regardless of whether the alteration is beneficial or prejudicial to him. 2 C. J. 1173; *Barton Sav. Bank & Tr. Co.* v. *Stephenson et al.,* 87 Vt. 433, 51 L. R. A. (N. S.) 346, 350.

Nor does the fact that the alteration was made in good faith

affect the case. A material alteration of a written contract may avoid it though innocently made. *Barton Sav. Bank & Tr. Co.* v. *Stephenson et al. (supra)*; 2 Smith's Leading Cases (9th Am. ed.) 1153; *Green* v. *Sneed,* 101 Ala. 205, 13 So. 277, 46 Am. St. Rep. 199; *Aldrich* v. *Smith,* 73 Mich. 468, 26 Am. Rep. 536; *Eckert* v. *Pickel,* 59 Iowa 545, 13 N. W. 708; *Davis* v. *Epplier,* 38 Kan. 629, 16 Pac. 793.

The alteration was unauthorized. Plaintiff did not testify that defendant told him to write a lien upon the note. Where there is consent to make an alteration, it must be made according to the specific terms of the consent, and must not be extended beyond it. 2 C. J. 1139; *Toomer* v. *Rutland,* 57 Ala. 397, 29 Am. Rep. 722; *Coburn* v. *Webb,* 56 Ind. 96, 26 Am. Rep. 15; *Swift* v. *Barber,* 28 Mich. 503; *Ex parte Decker,* 6 Cow. (N. Y.) 59; *Henning* v. *Werkheiser,* 8 Pa. 508.

TAYLOR, J. The action is special assumpsit on a promissory note. The defendants severally pleaded the general issue, with notice by defendant J. A. Williams in substance that he signed the note as indorser and had not received notice of protest, and by both defendants of a material alteration of the note without their consent or approval after it was executed and delivered. There was trial by jury with verdict directed for the defendants, to which verdict and the judgment thereon the plaintiff excepted.

As the evidence stood when defendants' motion for a verdict was granted, there was no dispute as to when and by whom the claimed alteration of the note was made. In its original form the note on its face read as follows:

"$400.00  St. Johnsbury, Vt., Dec. 11, 1911, Due....

On demand after date we promise to pay to the order of Geo. M. Gray four hundred dollars at the Merchants National Bank of St. Johnsbury, value received with interest payable semiannually.

GILBERT H. WILLIAMS,

Post Office address: Concord, Vt."

The name of the defendant J. A. Williams was written across one end of the back of the note. The note is an ordinary printed bank note with the blanks filled in writing. In its original form, it was discounted at the Merchants National Bank on Dec. 27,

1911. On or just before January 10, 1912, under circumstances which will later appear, the plaintiff procured the note from the bank and wrote on its face to the left of the signature of Gilbert H. Williams the following:

"This note is given in payment for one pair of horses, Susie and Harry, which I have this day bought of the said Geo. M. Gray, and said horses are to remain the property of said Gray until this note is fully paid."

Thereupon plaintiff sent the note to the town clerk of Concord, Vt., for record and across the back of the note was written:

"Concord Town Clerk's Office, Jan. 10, 1912, at 4 o'clock P. M. received for record and recorded in book 7, page 166, Lien Records.

Attest                F. A. Brown,
Fees Pd.                                   Town Clerk."

The note was returned to the bank which held it until some time before this suit was brought. Gilbert H. paid the interest thereon to the bank to July 1, 1912. Before bringing suit plaintiff became the owner of the note, but how and when does not appear. In his opening case, plaintiff introduced the note and rested. In defence Gilbert H. testified that he gave the note in question as the purchase price of a pair of horses purchased of plaintiff for $400; that he procured his brother J. A. Williams to indorse the note; that the words now on the note reserving a lien on the horses were not there when the note was delivered to plaintiff; that he never gave his consent nor agreed that the words might be inserted; that he was notified by the Merchants National Bank that it held the note and paid the interest to July 1, 1912, not knowing that the note had been altered; that he did not know of the notes being recorded in the town clerk's office of Concord until the time of the trial; and that he first learned of the alteration about Dec. 1, 1912. Defendant J. A. Williams testified that the words giving a "claim" on the horses were not in the note when he wrote his name across the back of it; that he first learned of the alteration in December, 1912, when plaintiff told him that he "wrote a claim into the note;" that he did not consent to nor approve of the alteration; that he notified the bank that he should not pay the note; that the bank never demanded payment from him; and that he never received notice of the protest of the note.

In rebuttal the plaintiff admitted having written on the note the words relating to a lien, claiming that the act was authorized by Gilbert H. and later ratified by J. A. Williams. We shall later have occasion to examine the evidence bearing upon those issues. At the close of all the evidence plaintiff moved for a directed verdict. The court denied the motion, holding that the alteration was a material one and intimating that there was no evidence to go to the jury on the questions of authorization and ratification. Thereupon defendants moved for a directed verdict on two grounds. (1) That on all the evidence J. A. Williams was an indorser and not a maker and the note not duly presented for payment with notice of protest; and (2) that plaintiff had materially altered the note after execution and delivery. The court ruled against the defendants on the first ground of their motion but sustained it on the second ground. No exception was saved to the court's ruling that there was no evidence to go to the jury on the questions whether the writing was authorized or ratified by either of the defendants, though the exceptions state that plaintiff was allowed an exception to the refusal of the court to comply with his motion for a directed verdict. The record does not disclose what plaintiff's claim was as to the effect of the writing on the note, only that it was not such an alteration as vitiated it.

The note was made and delivered before the Uniform Negotiable Instruments Act took effect, so its provisions do not apply. No. 99, Acts of 1912, Sec. 195.

Did the writing on the note amount to a material alteration of the instrument? There is practical harmony among the authorities as to the necessity that the alteration be material. The difficulty lies in determining what alterations are material and what are not. Theoretically the test is simple. A material alteration is one which makes the instrument speak a different language in legal effect from what it originally spoke; an alteration which produces some change in the rights, interests and obligations of the parties to the instrument. *Barton Sav. Bk. & Tr. Co.* v. *Stephenson*, 87 Vt. 433, 438, 89 Atl. 639, 51 L. R. A. (N. S.) 346.

It is of no importance whether, as a matter of fact, the alteration has changed the situation of the parties. "That is material which might become material." It follows that any

alteration which may in any event change the rights, interest, duties, or obligations of the parties sought to be charged is material in the legal sense. *Soaps* v. *Eichberg,* 42 Ill. App. 375; *Booth* v. *Powers,* 56 N. Y. 22; *Townsend* v. *Star Wagon Co.,* 10 Neb. 615, 7 N. W. 274, 35 Am. Rep. 493.

It is equally unimportant whether the alteration was beneficial or injurious. The question is not whether the party has been or could be injuriously affected, but whether or not his rights have been materially affected. Note 86 Am. St. Rep. 87, and cases cited. It necessarily follows that any alteration of an instrument by which it is made to cover a subject matter greater, or less, or different than that embraced in it before the alteration is material. Note 86 Am. St. Rep. 101, and cases cited.

It is urged that the plaintiff wrote the words on the note in good faith, honestly believing that he was authorized to do so by Gilbert H. Williams, and intending only to make the instrument conform to the original agreement; that, if defendant's claim be accepted as true, the added words did not make a lien, but were nothing more than a memorandum; but that, if considered an alteration, it did not invalidate the note, as the alteration was made without fraudulent intent.

The motive with which the words were written is entirely immaterial so far as their effect as an alteration is concerned. A material alteration by one not a stranger to it will avoid the instrument though innocently made. *Barton Sav. Bk. & Tr. Co.* v. *Stephenson,* 87 Vt. 433, 444, 89 Atl. 639, 51 L. R. A. (N. S.) 346. This, not because the thing done is deemed fraudulent, but because a contrary rule would open the door for fraud, and for the further reason that the alteration changes the legal identity of the instrument and causes it to speak a language different in legal effect from that which it originally spoke. 1 R. C. L. 997. However, plaintiff's intention is important in determining whether in fact there was an alteration; for to affect the validity of the note there must have been present an intent to alter it. *Barton Sav. Bk. & Tr. Co.* v. *Stephenson,* 87 Vt. 433, 438, 89 Atl. 639, 51 L. R. A. (N. S.) 346. If his intention was not to change the effect of the note but merely to make a memorandum upon it, there would be no alteration; but if his intention was to change the instrument from an ordinary note of hand to a conditional vendor's lien, the writing would be an

alteration regardless of its position.  1 R. C. L. 998; 2 C. J. 1210.

The position of the writing on the note is not important, for upon the question of the materiality of matter added to an instrument as constituting an alteration, the effect of the contract is to be gathered from the four corners of the instrument. *Warrington* v. *Early,* 2 E. & B. 763, 75 E. C. L. 763.  The general rule is that if a memorandum written on an instrument in the margin or at the foot is made before or at the time of its execution, it is considered a part of it; and if it affects the operation of the terms of the body of the instrument, it is a material part of it.   *Fletcher* v. *Blodgett,* 16 Vt. 26, 42 Am. Dec. 487; *Henry* v. *Colman,* 5 Vt. 402; 1 Dan. on Neg. In. (5th ed.) §151; 2 C. J. 1210; *Fitch* v. *Jones,* 5 E. & B. 238, 85 E. C. L. 238. The cases including our own are reviewed in an extended note to *Kurth* v. *Farmers', etc., Bank,* 77 Kan. 475, 94 Pac. 798, 15 L. R. A. (N. S.) 612, in 127 Am. St. Rep. 432.   It follows that words written by a party upon the margin of an instrument after its execution and delivery, constitute an alteration, if intended to affect the terms of the instrument and they would have such effect if there when the instrument was executed.

The evidence does not leave plaintiff's intention an open question.   Confessedly he intended to change the note to a conditional vendor's lien.   The nature of the writing and the use made of it in procuring it to be recorded as a lien, as well as plaintiff's testimony on the subject, have no other significance.

To determine whether the alteration was a material one we must compare the original note with the altered paper and say whether the latter, assuming its genuineness, evidences a contract materially different from the former.   That it does is too apparent to require extended argument.   In its original form it was an ordinary promissory note.   As altered, if genuine, it would evidence a conditional vendor's lien, "speaking a different language from what it originally spoke" and changing the "rights, interests and obligations of the parties."  For analogous cases, see *La Grange* v. *Coyle,* 50 Ind. App. 140, 98 N. E. 75; *Bank of Lauderdale* v. *Cole,* (Miss.) 71 South. 260; *McDaniel* v. *Whitsett,* 96 Tenn. 10, 33 S. W. 567; *Toledo Scale Co.* v. *Gogo,* 186 Mich. 442, 152 N. W. 1046; *Warren* v. *Fant,* 79 Ky. 1; *Benedict* v. *Cowden,* 49 N. Y. 396, 10 Am. Rep. 382; *Gerrish* v. *Glines,* 56 N. H. 9; *Wheelock* v. *Freeman,* 30 Mass.

(13 Pick.) 165, 23 Am. Dec. 674; *Lanier* v. *Clarke* (Tex. Civ. App.) 133 S. W. 1093; *Spencer* v. *Tripplett* (Tex. Civ. App.) 184 S. W. 712. The first three cases are especially in point.

In his brief plaintiff says if the act was authorized, a valid lien was created by the alteration, thus impliedly conceding that the alteration was in its nature material.

The alteration by plaintiff, a party to the note, being material was destructive of its validity. *Barton Sav. Bk. & Tr. Co.* v. *Stephenson*, 87 Vt. 433, 440, 89 Atl. 639, 51 L. R. A. (N. S.) 346. It does not matter if such was the fact, that the defendant Gilbert H. agreed to give a note signed by his two brothers or a claim on the horses. That alone would not give plaintiff authority to change the note. If the contract as written does not speak the actual agreement of the parties, one of them has no right to reform its language without the consent of the other. Unless the parties mutually agree to reform it, the aid of a court of equity must be invoked. *Merritt* v. *Dewey*, 218 Ill. 599, 75 N. E. 1066, 2 L. R. A. (N. S.) 217.

We are not now concerned with plaintiff's right to recover on the original consideration, for this is a suit declaring upon the note alone.

It remains to consider whether there was evidence for the jury on the questions of authorization or consent on the part of Gilbert H. Williams, or the subsequent ratification of the alteration by J. A. Williams. These are questions of fact and were for the jury, if there was evidence fairly and reasonably tending to support them. In the view most favorable to the plaintiff the evidence bearing on the former question was that during the negotiations for the purchase of the horses Gilbert said he would give plaintiff a claim on them and some other personal property, or secure his two brothers to sign the note; that for Gilbert's accommodation plaintiff permitted him to take the horses before the note was signed; that the note in its original form was made out and taken home by Gilbert to get the signatures of his brothers; that when it was returned it lacked the signature of one, whereupon plaintiff called Gilbert by telephone and told him that the note was not according to their agreement —that both brothers were to sign it; that Gilbert then said: ''Richard wouldn't sign the note and so you take the claim on the horses just as we agreed. I want you to be secure for the payment and will be down in a few days and see you;'' that

Gilbert did not come down and before the thirty days expired plaintiff procured the note from the bank and wrote in the words respecting a lien "as he had directed me to." Plaintiff testified in cross-examination that nothing was said by Gilbert about writing the words in the note; that he said, "take the lien on the horses, I want you to have it just as we agreed." Gilbert denied the talk over the telephone but admitted that during the talk about the trade he offered plaintiff a claim on the horses. From all the evidence it fairly appears that plaintiff understood that what he did was authorized by Gilbert.

We think that plaintiff was entitled to go to the jury on the question of Gilbert's consent to the alteration in advance of its being made. While authority to make an alteration is not presumed and the authority to make such an alteration as this will not be implied, it does not follow that express consent to the particular alteration must be shown. Actual assent may be inferred from the circumstances and the facts proved the same as any other fact. If, considering all the facts, the jury would be justified in inferring that the alteration was agreed to, the case is for their consideration on that question. The evidence was ample to show that plaintiff understood that assent was given to the alteration; and we think the jury might properly reach the conclusion that he was justified in that understanding by what transpired,—in other words that the understanding was mutual. For cases supporting this view see *Nichols* v. *Rosenfield,* 181 Mass. 525, 63 N. E. 1063; *Beston* v. *Amadon,* 172 Mass. 84, 51 N. E. 452; *Hunt* v. *Adams,* 6 Mass. 519; *Knoebel* v. *Kircher,* 33 Ill. 308; *King* v. *Bush,* 36 Ill. 142; *Kane* v. *Herman,* 109 Wis. 33, 85 N. W. 140; *Phillips* v. *Crips,* 108 Iowa 605, 79 N. W. 373; *Tiernan* v. *Fenimore,* 17 Ohio 545; *Sanders* v. *Bagwell,* 37 S. C. 145, 15 S. E. 714, 16 S. E. 770; *Barnett* v. *Effenberg,* 29 Okla. 679, 119 Pac. 135.

If the alteration was made with Gilbert's consent that would not revive J. A. Williams' liability in the circumstances, unless he ratified the alteration at the time plaintiff told him about it and thereby waived the right to rely upon it as a defence to the note. It is well settled that such ratification must be made intentionally and with full knowledge of the facts. An alteration of an instrument is ratified if with full knowledge of the alteration it is subsequently recognized by the other party thereto as valid. *Janney, Semple & Co.* v. *Goerhringer,* 52 Minn. 428, 54

N. W. 481. And an alteration may be impliedly as well as expressly ratified. *Divide Canal & Reservoir Co.* v. *Tenny,* 57 Colo. 14, 139 Pac. 1110; *Hül* v. *Scales,* 15 Tenn. (7 Yerg.) 410. Thus, where one acquiesces in a contract after he has knowledge that it has been changed he will be deemed to have ratified it. *Linington* v. *Strong,* 107 Ill. 295. Where a surety with full knowledge of the facts approves the alteration of a note he is bound. *Gardiner* v. *Harbeck,* 21 Ill. 129. The inference of ratification was held in *Matlock* v. *Wheeler,* 29 Or. 64, 40 Pac. 5, 43 Pac. 867, to be supported by testimony that when the alteration was called to the attention of the maker he said it was all right. In *Lance* v. *Calvert,* 21 Pa. Super. Ct. 102, when shown the altered note, the maker said that he had signed it and made no objection to the alteration. It was held that there was sufficient evidence to warrant the jury in finding that the maker ratified and adopted the note in its altered form. It was held in *Jacob* v. *Hart,* 6 M. & S. 142, 105 Reprint 1196, where the acceptor of a bill of exchange, upon being informed of an alteration of the date said, ''That is right,'' that the alteration did not vitiate the bill. Stated generally, any conduct on the part of the person affected, he having full knowledge of the facts, which shows an intention to recognize the validity of the instrument is sufficient where the instrument is not under seal. 2 C. J. 1256. See, also, *Holyfield* v. *Harrington,* 84 Kan. 760, 115 Pac. 546, 39 L. R. A. (N. S.) 131; *State* v. *Paxton,* 65 Neb. 110, 90 N. W. 983.

In the case at bar there was evidence, though contradicted, tending to show that plaintiff told J. A. Williams about the lien on the horses and how it was made; and that he replied that he was pleased, that it protected him and that he was glad plaintiff did it. We think that this was sufficient to carry the question of his ratification to the jury.

*Reversed and remanded.*