## DAVIS, STEELE & CO. v. C. EPPLER, *et al.*

1. NOTE — *Demand for Payment, When Excused.* Where the holder of a negotiable promissory note does not know the place of residence or the business of the maker, and makes diligent inquiry without obtaining knowledge thereof, a demand for payment of the maker is excused if he has the note when due, ready to be presented at the place where it is dated.

2. DISHONOR — *Sufficient Notice to Indorser.* Where notice of the dishonor of a note is sent through the mails, directed to the indorser at the post office where the note was dated and indorsed, it will be deemed sufficient when the only evidence about his residence is that he testified he lived in "Jefferson township," but said nothing, when a witness, concerning his post-office address.

3. CONTINGENT LIABILITY, *Made Absolute.* The placing of "Waive notice and protest" over the name of an indorser in blank of a promissory note, converts his contingent into an absolute liability.

4. INDORSEMENT, *Material Alteration Invalidates.* Any material alteration, although innocently done, in the indorsement of a promissory note, made without the knowledge of the indorser, invalidates the indorsement.

*Error from Republic District Court.*

ACTION to recover upon a promissory note. The case is fully stated in the opinion.

*T. M. Noble,* for plaintiffs in error.

*Van Natta & Close,* and *Hogin & Dillon,* for defendants in error.

Opinion by Holt, C.: This cause was tried in the Republic district court, at the January term, 1886, by the court, without a jury. Judgment was rendered in favor of Davis, Steele & Co. against N. Harper and J. T. Harper, and in favor of C. Eppler against Davis, Steele & Co. for his costs. No special findings were made by the court. Davis, Steele & Co. bring the case here for review. This action was brought upon a promissory note, executed by N. Harper and J. T. Harper, March 11, 1884, and due January 11, 1885; John Farrell was the nominal payee; he indorsed the note to C. Eppler, who was the real payee, and shortly after its execution he indorsed and sold it to Davis, Steele & Co., who are now the owners. After Eppler had sold the note to Davis, Steele & Co., they, wishing to use it as collateral in the east, indorsed it and placed over the names of Farrell, Eppler, and their own, the words "Waive notice and protest." Before the note became due it was returned to the plaintiffs, and the names of Davis, Steele & Co. were reversed, but "Waive notice and protest" was allowed to remain. The note was dated at Belleville, Kansas, but the testimony shows that neither of the Harpers ever lived there, nor obtained their mail at that post office. In the certificate of protest it is stated that the note was presented to N. Harper and J. T. Harper at Belleville, for payment; that payment was refused, and notice of the dishonor of the note was sent to N. Harper and J. T. Harper, in an envelope, with postage prepaid, directed to Seapo and Concordia, Kansas, respectively, and at the same time notice was sent to C. Eppler, directed to Belleville, Kansas. As a matter of fact, the note was not presented to either of the Harpers for payment at Belleville, or any other place, but was held by the plaintiffs at their bank. There is no testimony showing the post-office address of C. Eppler. Neither the Harpers nor Eppler received the notices sent them.

The plaintiffs assign for error that testimony offered by them was not admitted. We shall not consider such alleged error specially, but will examine the case on the theory that the evidence rejected should have been admitted, provided it was material, and shall consider the case as though the evidence had been brought here for consideration. The two grounds pressed by both parties for our consideration are, first, whether there was due diligence in attempting to make demand for payment of the Harpers, and giving Eppler notice; second, whether the addition of the words " Waive notice and protest" destroyed the liability of Eppler to plaintiff on his indorsement. The note was dated at Belleville, Kansas, but the plaintiffs knew it was not the place of residence of the Harpers; they had been told they lived in Republic county. It is shown that the plaintiffs made inquiry in Belleville, and of the farmers who came into the city from the country about them, but did not find out where they lived. In the absence

1. Note—demand for payment, when excused.

of knowledge, after inquiry, of their known or reputed place of residence, we think it was sufficient to excuse plaintiffs from making demand for payment of the makers, if they had the note at the place where it was dated, ready for presentment. (Dan. Neg. Inst. § 640; *Orcutt v. Hough*, 54 N. H. 472.) They sent the notice of the dishonor of the note through the mail, directed to C. Eppler, the indorser, at Belleville, Kansas, and it was not proven where his post office was; he said in his testimony that he lived in Jefferson township, Republic county, but was silent in reference to his post-office address, and there is nothing in his testimony to indicate where he usually obtained his mail. We think it would be fair to presume, in the absence

2. Dishonor—sufficient notice to indorser.

of any showing whatever except that he lived in Jefferson township, that Belleville was his post office, from the fact that he indorsed the note at that place. (Dan. Neg. Ins., § 640; *Smith v. Philbrick*, 10 Gray, 252.)

The most serious question in this case is, whether the writing of the words " Waive notice and protest" on the back of

the note before maturity, over the names of Farrell and Eppler, was such an alteration as to relieve the defendant Eppler of his liability as indorser. It is proven that Eppler never consented to such addition; on the other hand, it is also well established by the evidence that such writing was not made with the intention of creating any greater liability on the part of Eppler; it is beyond question that the indorsement was a substantial change in the contract between Eppler and plaintiffs; it changed his contingent liability to an absolute one. (Dan. Neg. Ins., § 1390; *Farmer v. Rand*, 14 Me. 225; *Andrews, Adm'x, v. Sims, Adm'r*, 33 Ark. 771.)

3. Contingent liability, made absolute.

Plaintiffs in error contend that because the alteration was made innocently and without any intention of defrauding Eppler or increasing his liability, and for the further reason that plaintiffs attempted to pursue the same course toward Eppler they would have done if "Waive notice and protest" had not been written on the note, that these words should be disregarded, although they were a substantial alteration in themselves. They cite, as supporting their theory, *Kountz v. Kennedy*, 63 Pa. St. 187. In that case Kountz indorsed a note given by Hunt to Kennedy; after the indorsement the words "with interest" were added to the note by the agreement of Hunt and Kennedy, without the knowledge of Kountz, but with no intention of altering his liability. Afterward Kennedy brought his action against Kountz as indorser, but the words "with interest" had been taken out by the use of some kind of chemicals, before suit. The court held the indorser liable. In the opinion it is said:

"But the note in evidence was precisely in the form it was when indorsed. It had been returned to its original shape. The restoration was not a fraud on the indorser, for it left the note as it was when the indorsement was made. Now it seems to me, that as the identity of the note remained and there was nothing in it to enlarge the obligation of the indorser, and as what had been done was innocently but mistakenly done and expunged for aught we know, within the hour after

it had been done, there is no rule of law unreasonable enough to hold it avoided by this."

That case presented a different state of facts from this, in which the words "Waive notice and protest" still remain a part of the instrument sued on, and thus destroy the identity of the note. They cite also *Savings Bank v. Schaffer*, 9 Neb. 1. A note was given for $217.36, but changed by the holder to $208.12. An action was brought upon the note as changed. It was held that the note was void into whosesoever hands it might afterward come, but allowed an amendment of the pleadings so that a recovery could be had upon the original consideration for which the note was given. The distinction between that case and this is obvious. The rule laid down in Randolph on Commercial Paper is, that if a note or bill is altered designedly by the owner, it will be rendered void, even without fraud on his part, (§ 1742;) also in the same authority it states that the indorser is discharged by writing over a blank indorsement a waiver of demand and notice, (§ 1753.) .

We believe it would be a dangerous rule to allow written contracts, more especially negotiable paper, to be altered without the consent of the maker, or the parties who are bound by the indorsement. It is intended that such instruments shall pass into the hands of those who may become interested in them, without addition or alteration, and without the fear that they may have been altered. The facilities for making alterations are numerous, and the difficulty of proving them great; all means should be employed to impress a sense of their inviolability upon the minds of those who have them in their possession. In *Evans v. Foreman*, 60 Mo. 499, it is said:

"If mistakes do arise in the preparation of written instruments, aside from the consent of all parties to the needed correction, the courts of the country alone can furnish adequate redress, and we will not give sanction or countenance to the attempts of an interested party to effect by his own hand the desired reformation; as an honest blunder of this sort if upheld in one instance, might necessitate sanctioning an alteration having that appearance, but which, from the infirmity of human testimony, might be grossly otherwise."

It is the policy of the law to allow no tampering with written instruments. The holder of a note has no right to alter it without the consent of all the parties interested, and such unwarranted alteration should make it null in his hands, no matter how pure his motives may have been in making the alteration. (*Bank of Springfield v. Fricke*, 75 Mo. 178; *Moore v. Hutchinson*, 69 id. 429; *Neff v. Horner*, 63 Pa. St. 327; *Fraker v. Cullum*, 21 Kas. 556; *Horn v. Newton City Bank*, 32 id. 518.)

*4. Indorsement, material alteration invalidates.*

For the reasons given herein, we recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.