C. C. CHEEK v. J. J. NALL AND WIFE.

*Alteration of Bond and Mortgage, effect of—Feme Covert.*

1. Where a husband, without the consent or knowledge of his wife, altered a bond executed by them by "raising" the amount before delivery to and without the knowledge of the obligee: *Held*, that the bond was rendered void as to the wife by such alteration.

2. Where a wife, with her husband, executed a bond and mortgage upon her land to secure the same, and the instruments were entrusted to the husband for delivery, and he, without her knowledge or consent, and before delivery to, and without the knowledge of, the obligee, altered the bond by "raising" the amount, and the mortgage by "raising" the consideration recited therein, but the description of the debt secured by the mortgage (as "a certain bond of even date, herewith," etc.), was not altered: *Held*, that, though such alteration avoided the bond, it did not render the mortgage void, the alteration of the consideration being immaterial, and the mortgage may be enforced for the amount of the debt intended to be secured by the mortgage, notwithstanding the invalidity of the bond.

CIVIL ACTION, tried before *Bryan, J.*, at February Term, 1893, of CHATHAM Superior Court, for the foreclosure of a mortgage.

By consent of parties a jury trial was waived, and his Honor found the following facts:

On the 4th day of March, 1889, the defendants executed the bond and mortgage mentioned in the amended complaint. That subsequent to the execution and attestation of said bond, and the acknowledgment and privy examination of the mortgagors, the bond was changed so that it was a promise to pay four hundred dollars instead of two hundred dollars, and the consideration of the mortgage was changed from two to four hundred dollars, and that these changes and alterations were made without the knowledge or consent of the *feme* defendant or the plaintiff; and that after such execution and before the said changes, the said bond and mortgage were, by the consent of the *feme* defendant, taken possession of by the male defendant, and some days thereafter delivered to Cheek. And the alterations and changes from two to four hundred dollars were made after the *feme* defendant parted with the bond and mortgage and before their delivery to the plaintiff. That the *feme* defendant is the wife of the male defendant, and was at the time of the execution of said bond and mortgage. That the land described in the said mortgage was conveyed to the defendants after their marriage, to them as husband and wife. Upon these facts his Honor gave judgment for the plaintiff for $200 and interest from the date of the mortgage, and for sale of the land. To this judgment the defendants excepted, and from the same appealed, assigning for error that his Honor held that, notwithstanding the bond and mortgage had been changed from two to four hundred dollars after signing and attestation of the bond, and after the acknowledgment of the signing of the mort-

gage and the privy examination of the *feme* defendant, and after she had parted with all control over them, or consent, yet the mortgage was valid as security for two hundred dollars, the sum for which said bond and mortgage were given.

Mr. T. B. Womack, for plaintiff.
Mr. Charles E. McLean, for defendants.

SHEPHERD, C. J.: As to the male defendant, the delivery of the bond and mortgage is admitted, and it is very clear that his fraudulent alterations of the same cannot have the effect of relieving him from the liability imposed by their original terms.

As to the *feme* defendant it appears from the admission in the pleadings and the facts found by his Honor that she signed both of the above-mentioned instruments and was privily examined as to the execution of the mortgage. These, with her consent, were taken possession of by the male defendant, her husband, and some days thereafter delivered to the plaintiff.

From this it appears that the delivery of the bond and mortgage, in their original form, was authorized by the *feme* defendant, but as the alteration was made before actual delivery she claims that neither of the said instruments is her act and deed, and that both are absolutely void as to her. The bond was altered so as to read four hundred instead of two hundred dollars, and, this being a material alteration of the terms of the instrument without the consent of the *feme* defendant, it may be avoided by her.

The mortgage, however, is valid, as the alteration was not a material one, and it is well settled that "an alteration which does not change its legal effect does not, in

law, amount to an alteration, and of course does not invalidate it either at law or in equity. 1 Jones' Mortgages, sec. 95; *Robertson* v. *Hay*, 10 Pa. St., 242; *Hunt* v. *Adams*, 6 Mass., 519; *Gardner* v. *Gilliland*, 7 Harris, 326. The only alteration in the mortgage consisted in changing the amount of the recited consideration from two hundred to four hundred dollars, but no change whatever was made in the description of the debt to be secured therein, which debt is identical with the bond of two hundred dollars mentioned in the pleadings. A deed is good although no consideration is recited (*Love* v. *Harbin*, 87 N. C., 249, and *Mosely* v. *Mosely*, *Ibid.*, 69), and it has also been decided that a recital of the receipt of the purchase-money is not contractual in its character. *Barbee* v. *Barbee*, 108 N. C., 581. If the recital was non-contractual and unnecessary, a change in the amount of the expressed consideration was immaterial and could not affect the validity of the mortgage. The title passed, and whatever may have been a recital as to the consideration, it could in no event affect the amount of the sum to be secured.

If, then, the mortgage is valid, why may not the debt be enforced against the land? In *Capehart* v. *Dettrick*, 91 N. C., 344, the Court, after an elaborate discussion, reached the conclusion that in this State the mortgage is not regarded as merely subsidiary to the debt, but is "a direct appropriation of property to its security and payment." The note or bond, it is said, is the personal obligation of the debtor and may be enforced in a personal action, while the mortgage may be enforced in a proceeding to subject the property to the satisfaction of the indebtedness. "These remedies," continues the Court, "against the person and property specifically assigned are entirely different, and while subsisting and concurrent, either may be resorted to. The loss of one does not of itself cut off a resort to the

other." This doctrine has been applied where the personal remedy was barred by the statute of limitations (*Capehart* v. *Dettrick, supra*) and where the personal liability has been extinguished by a discharge in bankruptcy. 2 Jones' Mortgages, 1231; *Brown* v. *Hoover*, 77 N. C., 40. In these instances the creditor may enforce the collection of the indebtedness against the property mortgaged, and "such is also the case if the mortgage note be made invalid by alteration." 2 Jones' Mort., 1215; 18 Hun., 10.

The destruction of the bond by the alteration did not take away the liability of the *feme* defendant as recognized in the mortgage. Indeed, having pleaded coverture, she was not personally liable upon the bond at all, and the legal obligation was only imposed by the executed contract (the mortgage), which, upon being privily examined, she was authorized to make. The mortgage, then, being valid and the debt not having been paid according to its conditions, we think that the alteration of the bond cannot have the effect of divesting the legal title of the plaintiff, the mortgagee; nor should it preclude him from enforcing the collection of the amount due him by subjecting the property which has been specifically appropriated to its payment.

The result would probably be different had the obligation been created by the bond only—the same being void *ab initio*.　　　　　　　　　　　　　Affirmed.