MAUDE E. JEFFREY & others *vs.* DAVID ROSENFELD.

Middlesex. January 22, 1901. — September 7, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Alteration of Instruments. Negotiable Instruments Act. Equity Jurisdiction.*

*Semble,* that a bill in equity seeking relief on the ground that an alteration was made in a certain negotiable instrument should describe the alteration, in order that the court may see whether as matter of law it was a material alteration under St. 1898, c. 533, § 125. *Whether,* such defect could be taken advantage of on a general demurrer for want of equity, *quære.*

Whether § 124 of the negotiable instruments act, St. 1898, c. 533, which is copied from § 64 of the English bills of exchange act, should be construed as the original section probably would be in England, that the effect of a material alteration by whomsoever made would be to avoid the note as to all parties except those consenting to it and subsequent indorsers, or whether the rule in this Commonwealth as laid down in *Drum* v. *Drum,* 133 Mass. 566, would be applied, that a material alteration of a note by a stranger will not avoid it, *quære.*

*Semble,* that under St. 1898, c. 533, § 124, where a loan of money is secured by a note and mortgage, a material alteration of the note without fraud may not cancel the debt or avoid the mortgage.

A bill in equity, to restrain the foreclosure of a mortgage on the ground that after the delivery of the mortgage and note there was a material alteration of the note without the plaintiff's assent, contained no allegation of fraud or of fault on the part of the mortgagee, and no allegation that the note or the debt which the mortgage was given to secure had been paid or that there was any tender or offer of payment. *Held,* that the bill did not state a case which entitled the plaintiff to relief in equity.

MORTON, J. This is a bill in equity to restrain the foreclosure of a mortgage on the ground that, after the delivery of the mortgage and note, there was a material alteration of the note without the plaintiffs' assent. The nature of the alteration or by whom it was made is not set out, nor is it alleged that

the alteration was fraudulent.   There was a demurrer for want of equity, and on the grounds that the bill did not state a case that entitled the plaintiffs to relief, and that they had an adequate remedy at law.   The demurrer was sustained, and the bill dismissed and the plaintiffs appealed.

The defendant contends that the nature of the alleged alteration should have been specifically set forth.   St. 1898, c. 533, § 125, the negotiable instruments act, provides what alterations shall be deemed material, and it would seem for that and other reasons, that as matter of correct pleading the bill should have described the alteration relied on, in order that the court might see whether as matter of law the alteration was a material alteration.   But for the purposes of this case we assume in favor of the plaintiffs, without deciding, that this defect if relied on as a ground of demurrer should have been particularly pointed out, and that it is not open to the defendant when the cause of demurrer assigned is the general one of a want of equity or that the bill does not state a case which entitles the plaintiffs to relief.

The question which has been chiefly argued relates to the effect of the alteration of the note upon the mortgage.   The bill alleges that the mortgage was given to secure the payment of the note, but for aught that appears the transaction was the ordinary one of a loan of money secured by a note and mortgage.   At any rate there is nothing to show that the note and mortgage were not both given upon the same consideration, and to secure the same debt, and there is no allegation that the debt has been paid or satisfied in any way.   If the mortgage was given to secure the personal obligation created by the note and nothing more, the allegations of the bill should have been more specific.

There is no doubt that the effect of a material alteration of a note has been held to be different in some respects in England from what it has been held to be in this country.   Thus it has been held there that a material alteration even by a stranger without the knowledge or assent of any of the parties to the note will avoid it.   *Davidson* v. *Cooper*, 11 M. & W. 778; 13 M. & W. 343.

And very likely it would be held under the bills of exchange

act that the effect of such an alteration by whomsoever made would be to avoid the note as to all parties except those consenting to it and subsequent indorsers. Chalmers' Bills of Exchange, (5th ed.) 213, 214.

But the law has been laid down differently in this Commonwealth (*Drum* v. *Drum*, 133 Mass. 566) ; and, according to the weight of authority in this country, a material alteration of a note by a stranger, or a spoliation of it, as it is termed, will not avoid the note. *Drum* v. *Drum*, *ubi supra*. Dan. Neg. Instr. (3d ed.) § 1373 *a*. 2 Pars. Notes & Bills, (1st ed.) 574. Norton, Bills & Notes, (2d ed.) 234, 235. 1 Ames Cases on Bills & Notes, 449.

Whether, therefore, § 124 of the negotiable instruments act (St. 1898, c. 533,) which is copied from § 64 of the bills of exchange act (St. 45 & 46 Vict. c. 61,) should receive the same construction which that has received or which it undoubtedly will receive, deserves serious consideration. The statute enacted in this State is the same in substance and effect as that adopted by the Conference of Commissioners on Uniformity of Laws, which met at Detroit in 1895, and has already been enacted in fifteen States (14 Harv. Law Rev. 241, December, 1900, by Professor Ames); and although it is largely copied from the English act and is in many of its provisions an almost if not quite verbatim copy of that act, it would seem not unreasonable to suppose that it was the intention of the framers of the American act that § 124 should be construed according to the law of this country rather than that of England. But it is not necessary to pass upon that question now. In England as in this country, except when an alteration is fraudulent, it does not cancel or extinguish the debt for which the note was given. *Sutton* v. *Toomer*, 7 B. & C. 416. *Atkinson* v. *Hawdon*, 2 A. & E. 628. Byles on Bills, (4th Am. ed.) 257. 2 Am. & Eng. Encyc. of Law, (2d ed.) 200, 202. Dan. Neg. Inst. (3d ed.) §§ 1410 *a*, 1411. 2 Pars. Notes & Bills, (1st ed.) 571, 572.

And the cases are numerous in which it has been held that a party could recover upon the original consideration, notwithstanding there had been a material alteration of the written contract. *Lee* v. *Butler*, 167 Mass. 426. *Nickerson* v. *Swett*, 135 Mass. 514. *Adams* v. *Frye*, 3 Met. 103. *Smith* v. *Dunham*, 8 Pick

246. *Milbery* v. *Storer*, 75 Maine, 69. *Croswell* v. *Labree*, 81 Maine, 44. *Keene* v. *Aldrich*, 19 R. I. 309.

Following out this principle, it has been held in many cases that the material alteration of a mortgage note if not fraudulent will not avoid the mortgage. *Elliott* v. *Blair*, 47 Ill. 342. *Vogle* v. *Ripper*, 34 Ill. 100. *Clough* v. *Seay*, 49 Iowa, 111. *Gillette* v. *Smith*, 18 Hun, 10. *Cheek* v. *Nall*, 112 N. C. 370. *Heath* v. *Blake*, 28 S. C. 406, 416. 2 Am. & Eng. Encyc. of Law, (2d ed.) 202. 2 Jones, Mortgages, (3d ed.) § 1215.

It is true that in this State it is held, contrary to what is the law in most of the States and in England, that a negotiable note is *prima facie* payment of the debt for which it is given. But the rule is not an unqualified one. *Curtis* v. *Hubbard*, 9 Met. 322. Thus where a note is avoided by the maker for illegality or fraud the promisor may recover the original consideration in an action for money lent or money had and received, (*National Granite Bank* v. *Tyndale*, *ante*, 390; *Walker* v. *Mayo*, 143 Mass. 42,) and the presumption of payment is rebutted when the effect will be to deprive a party of security which he has taken for the payment of the debt for, which the note was given. *Curtis* v. *Hubbard, ubi supra*. *Davis* v. *Parsons*, 157 Mass. 584.

This being the state of the law at the time of the passage of the negotiable instruments act, we should hesitate to say that the effect of § 124 is not only to avoid the note in case of a material alteration, but to cancel the debt for which it was given, and to deprive a party of the benefit of any security that he may have taken.

But it is not necessary to go so far. This is a suit on the equity side of the court. As already observed, there is no allegation of fraud in the bill, or of fault on the part of the mortgagee. For aught that appears the alteration in the note may have been made by a stranger, or may have been innocently made by the holder for the purpose of rectifying what he supposed to be a mistake occurring under such circumstances that he would be entitled in equity to a reformation of the note and mortgage. There is no allegation that the note or the debt which the mortgage was given to secure has been paid and there is no tender of payment.

The mortgage is a separate instrument from the note. At

law and in equity the holder can enforce his remedy upon the mortgage independently of or concurrently with that on the note, and in some cases, at least, where he had lost his remedy upon the note. *Thayer* v. *Mann*, 19 Pick. 535. 2 Jones, Mortgages, (3d ed.) §§ 1215 *et seq.* Under the circumstances, there being no allegation of payment and no offer of payment in the bill, we think that the bill does not state a case which entitles the plaintiff to relief and that the demurrer was rightly sustained and the bill rightly dismissed.

*Decree affirmed.*

*J. B. Dixon*, for the plaintiffs.

*J. F. Libby*, (*L. L. G. de Rochemont* with him,) for the defendant.