BARTON SAVINGS BANK AND TRUST COMPANY *v.* I. STEPHENSON,
ET AL.

January Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 6, 1914.

*Alteration of Instruments—Materiality—Change of Date Before
    Delivery—Effect on Liability of Not Consenting—Persons
    Making Alteration—Act of Stranger—Intent of Alteration
    —Memorandum—Bills and Notes—Bona Fide Purchasers.*

Where one of the makers of a promissory note payable to a bank, after
    his comakers had left it with him to be delivered to the bank in
    renewal of a note for the same amount, crossed out the date with
    lines in ink, but so that it still remained perfectly legible, and
    inserted another date, the change was a material alteration of the
    instrument, and not a mere memorandum from which interest
    should be computed, and made the note void as against all the
    makers without whose knowledge the change was made.

The rule that a material alteration of a written contract vitiates it
    only when the alteration is made or authorized by one who takes
    some benefit under the instrument applies only to delivered written
    contracts.

The fact that makers of a promissory note after signing it left it with
    one of them for delivery did not authorize that one to change the
    date before delivery.

Where makers of a promissory note after signing it left it with one of
    them for delivery and he changed the date before delivery, that
    alteration could not be regarded as the act of a stranger within
    the rule that a material alteration by a stranger will not make the
    instrument void.

Any alteration of a written contract, which may in any event change
    the rights, duties or obligations of the party sought to be charged
    is material, regardless of whether the alteration is beneficial or
    prejudicial to him.

A material alteration of a written contract may avoid it, although in-
    nocently made.

Although it is presumed in the first instance that all alterations of a written instrument were made before, or at the time of, its execution, a bank in accepting a note that had been drafted by its cashier eight months before, and the date of which had been since visibly altered, could not rely on that presumption, but was put upon inquiry by the appearance of the note.

The order of the reception of evidence is within the discretion of the trial court.

ASSUMPSIT on a promissory note. Plea, the general issue with notice on the part of all the defendants, except Stephenson, of a material alteration without their knowledge after they signed and before delivery. Trial by jury at the March Term, 1912, Orleans County, *Taylor,* J., presiding. Verdict for the plaintiff as to defendant Stephenson, and against plaintiff as to the other defendants, and judgment thereon. The plaintiff excepted. The opinion fully states the case.

*Young & Young* for plaintiff.

This is the valid note of all the defendants as of June 1, 1908. Byles on Bills and Notes, 6 Am. Ed. 486, *320; *Equitable Mfg. Co.* v. *Allen,* 76 Vt. 22; *Nickerson* v. *Sweet et al.,* 135 Mass. 514; *Eddy* v. *Bond,* 19 Me. 461, 36 Am. Dec. 767; *Jessup* v. *Dennison,* 2 Disney (Ohio) 150; *Bridges* v. *Winters,* 42 Miss. 135, 2 Am. Rep. 598; *Murray* v. *Graham et al.,* 29 Ia. 520; *Wolferman* v. *Bell,* 6 Wash. 84, 36 Am. St. Rep. 126; *Yakima National Bank* v. *Knipe,* 6 Wash. 348, 36 Am. St. Rep. 128; *Ducker* v. *Franz,* 7 Bush. 273, 3 Am. Rep. 314; *U. S.* v. *Linn,* 1 How. 104.

The intent with which the "December 1st" was written and "June 1" lined out was material. It is not the fact, that an instrument is altered, that makes it void. It is the intent that gives the act its character and avoids the instrument. *Bigelow* v. *Stilphens,* 35 Vt. 521; *Smith* v. *Dunham,* 8 Pick. 246; *Adams* v. *Frye,* 3 Met. 103; *Ford* v. *Ford,* 17 Pick. 418; *Ames* v. *Colburn,* 11 Gray 390; *Lee* v. *Butler,* 167 Mass. 426; *Milbery* v. *Storer,* 75 Me. 69, 46 Am. Rep. 361; *Thornton* v. *Appleton,* 29 Me. 298; *Croswell* v. *Labree,* 81 Me. 44, 10 Am. St. Rep. 238; *Murray* v. *Peterson,* 6 Wash. 418, 36 Am. St. Rep. 129; *Connor* v. *Routh,* 7 How. 176, 40 Am. Dec. 59; *Vogle* v.

*Ripper,* 34 Ill. 100, 85 Am. Dec. 298; *Kountz* v. *Kennedy,* 63 Penn. St. 187, 3 Am. Rep. 541; *Derby* v. *Thrall,* 44 Vt. 413; *Barlow* v. *Buckingham,* 68 Iowa 169; *Hammerschlag* v. *Union National Bank of Wilmington,* 13 Weekly Notes case 205, Penn. 1883; *Hervey* v. *Hervey,* 15 Me. 357.

The rule that a material alteration vitiates a written instrument applies only where the change has been made by the payee or the party seeking the enforcement of the instrument. *Fullerton* v. *Sturgis,* 4 Ohio St. 529, 17 Am. Rep. 100; *Fellows* v. *Weeks,* 41 Vt. 590; *Walsh* v. *Hunt,* 120 Cal. 46, 39 L. R. A. 697; *Herrick* v. *Baldwin,* 17 Minn. 209, 10 Am. Rep. 161.

If Stephenson was not defendants' agent in making the alteration his act was that of a stranger, was not an alteration but a mere spoliation, and the note remained a valid note of all defendants as of June 1, 1908. *Lee* v. *Alexander,* 9 B. Mon. 25, 48 Am. Dec. 412; *Langenberger* v. *Kroeger,* 48 Cal. 147, 17 Am. Rep. 418; *Piersol* v. *Grimes,* 30 Ind. 129, 95 Am. Dec. 673; Parsons on Bills and Notes, 569-571; 3 Randolph Commercial Paper, §1765; *Force* v. *City of Elizabeth,* 28 N. J. Eq. 403; *Drum* v. *Drum,* 133 Mass. 566; *Rees* v. *Overbough,* 6 Cowen 746; *Murray* v. *Graham et al.,* 29 Iowa 520; *Williams* v. *Mosely,* 2 Fla. 304, 328.

If the change made by Stephenson was an alteration, it was immaterial and does not release defendants. *Mich. Ins. Co.* v. *Leavenworth's Est.,* 30 Vt. 11; *Drexler* v. *Smith,* 30 Fed. 754; *Bingham* v. *Reddy,* 5 Ben. 266; Fed. Cases 1414; *Reed* v. *Roark,* 14 Tex. 329, 65 Am. Dec. 127; *Burgess* v. *Blake,* Note, 86 Am. St. Rep. 84; *Clark* v. *Kidder et al.,* 12 Vt. 689, 691; *Broughton* v. *Fuller,* 9 Vt. 373; *Derby* v. *Thrall,* 44 Vt. 413.

*J. W. Redmond, Harland B. Howe* and *H. W. Witters* for the defendants.

The law here involved is not that governing the alteration or spoliation of written contracts, but that governing the formation of contracts. This is the case of the alteration of a written instrument which, because of the alteration, never became a contract at all, except as to Stephenson. The instrument that the others signed was never delivered; and the instrument that was delivered they never signed. That is the case when reduced to its lowest terms. 2 Cyc. 144, 145; *Hershman* v. *Stafford,* 58

W. Va. 459; *McGravock* v. *Morton,* 57 Neb. 385; *Sherwood* v. *Merritt,* 83 Wis. 233; *Pew* v. *Laughlin,* 3 Fed. 396; The Hero, 6 Fed. 526; *Waterman* v. *Vose,* 43 Me. 504; *Bethume* v. *Dozier,* 10 Ga. 235; *Glover* v. *Robbins,* 49 Ala. 219; *Hill* v. *O'Neil,* 101 Ga. 832; *Benedict* v. *Miner,* 58 Ill. 19.

The change of date was a material alteration and aborted the nascent contract as to the parties not consenting to the change. Bigelow, Bills and Notes, 187; *Mersman* v. *Werges,* 112 U. S. 141; Daniel Neg. Inst. (Fifth ed.) §§1373, 1375, 1376; *Crawford* v. *West Side Bank,* 100 N. Y. 50; *Dietz* v. *Harder,* 72 Ind. 208; *Flannigan* v. *Phelps,* 43 N. W. 1113; *Johnston* v. *May,* 76 Ind. 293; 2 Elliott Ev. §1492; *Montgomery* v. *Crosswaite,* 90 Ala. 533, 24 Am. St. Rep. 832; *Woodworth* v. *Bank,* 19 Johns. 391, 10 Am. Dec. 289, and elaborate note; *Angle* v. *Northwestern, etc. Ins. Co.,* 92 U. S. 330; *Greenfield Bank* v. *Stowell,* 123 Mass. 196, 25 Am. Rep. 67; *Draper* v. *Wood,* 112 Mass. 315, 17 Am. Rep. 92; *Weit Plow* v. *Walmsley,* 110 Ind. 242, 11 N. E. 232; *Benedict* v. *Cowden,* 49 N. Y. 396, 10 Am. Rep. 382; *Miller* v. *Finley,* 26 Mich. 249, 12 Am. Rep. 306; *Warrington* v. *Early,* 2 El. & Bl. 763; *Fordyce* v. *Kosminski,* 49 Ark. 40, 4 Am. St. Rep. 18; *McDaniel* v. *Whitsett,* 96 Tenn. 10, 33 S. W. 567; *National etc. Bank* v. *Madden,* 114 N. Y. 280, 11 Am. St. Rep. 633; *Burrows* v. *Klunk,* 70 Md. 451, 14 Am. St. Rep. 371; *Phoenix Ins. Co.* v. *McKernan,* 100 Ky. 97, 37 S. W. 490; *Hartley* v. *Corboy,* 150 Pa. St. 23, 24 Atl. 295; 2 Cyc. 180, 182 and cases cited; 2 Elliott Ev. §1516; *Steele* v. *Spencer,* 1 Pet. 552; *Payne* v. *Long,* 121 Ala. 335, 25 So. 780; *Heard* v. *Tapan,* 116 Ga. 930, 43 S. E. 375; *Belfast Bank* v. *Harriman,* 68 Me. 522; *Keen* v. *Monroe,* 75 Va. 424; *Prichard* v. *Smith,* 77 Ga. 463; *Vance* v. *Lowther,* 1 Exch. Div. 176; *Overton* v. *Mathews,* 35 Ark. 146; *Winkles* v. *Geunther,* 98 Ga. 472; *Bowers* v. *Jewell,* 2 N. H. 543; *Boulton* v. *Langmuir,* 24 Ont. App. Rep. 618.

Plaintiff was put on inquiry by the visible alteration. *Angle* v. *Northwestern Ins. Co.,* 92 U. S. 330; *Kennedy* v. *Green,* 3 Mylne & K. 697; *Booth* v. *Barnum,* 9 Conn. 286; *Goodman* v. *Simonds* 20, How. 343.

MUNSON, J. The suit is upon a note, the body of which is as follows: "On demand after date for value received, we each as principal, jointly and severally promise to pay the Barton National Bank or order, at their banking rooms in Barton, Vt., seven thousand dollars, with interest payable semi-

annually on the first day of June and December each year.'' The note bears the payee's indorsement to the plaintiff. There are ten signers to the note, all of whom are defendants. The date of the note as originally drawn was June 1, 1908. The face of the note shows a change by drawing lines in ink across "June 1," and writing above this the words "December 1st." The part thus crossed remains perfectly legible.

From May, 1904, until the giving of the note in suit, the Barton National Bank held a note identical in terms with the note in suit, which was signed by defendant Stephenson and nine others, three of whom had deceased before the new note was given, and six of whom became signers on the new note and are defendants herein. The remaining signers on the new note were procured on the requirement of the Bank to take the place of the former signers who had deceased. The note in suit was prepared by the cashier of the Bank after the interest on the old note had been paid to June 1, 1908, and was mailed to Stephenson for the required signatures July 10, 1908. Several letters urging attention to the matter were written to Stephenson in the next four months. December 3, 1908, he paid the interest on the old note to December 1. The note in suit was delivered to the Bank by mail in exchange for the old note, March 10, 1909. March 15, 1909, the plaintiff Bank purchased from the liquidator of the Barton National Bank all its assets, including the note in suit.

The first note was not presented to the commissioners on the estate of either of the three signers who had deceased. The three signers of the new note who were not on the first note are Horace S. Richardson, Homer W. Tillotson and J. S. Brahana. Richardson and Tillotson were sons of deceased signers of the first note, and Brahana was the brother of a deceased signer. Richardson testified that he understood, at the time he signed, that his father was on the previous note. Nothing further appears as to any knowledge of these signers regarding the first note.

The signatures to the note in suit were procured at different times from July, 1908 to March, 1909. Subsequent to the signing of the note and just before sending it to the Bank, Stephenson made the change above described, without the knowledge, authorization or consent of any of the other defendants, unless the law implies such authority or consent from the con-

duct of the parties.   Stephenson testified that he made the change to have the note correspond with the date to which interest had been paid on the old note.

The declaration contains the general counts and four special counts.   The first special count declares on the instrument as a note dated June first, 1908; the second declares on it as a note dated December first, 1908; and the third declares on it as a note delivered to the Barton National Bank on the tenth day of March, 1909, without alleging a date.   The plaintiff recovered a judgment against Stephenson, and the other defendants had judgment for their costs.   In speaking of the defendants the reference will be to the nine defendants who had judgment.   The case antedates the operation of No. 99, Acts of 1912, known as the Negotiable Instruments Act.

The plaintiff claims that the court should have held, or permitted the jury to find, that the words "December 1st" were a mere memorandum of the time from which interest was to be figured, and not an alteration of the date.   It is true that entries may be made on the face of a note, which, if made to serve the purposes of a memorandum and without an intention to alter the instrument, will not affect its validity.   *Carr* v. *Welch,* 46 Ill. 88; *Maness* v. *Henry,* 96 Ala. 454; 11 So. 410. If Stephenson had written these words in pencil or red ink, above the date and without crossing it out, the entry could doubtless be treated as a mere memorandum.   But the writing of one in connection with the crossing out of the other, both in the same durable substance, forbids this construction.   An inspection of the note shows an alteration in fact, and Stephenson's testimony as to his purpose in making it cannot convert it into a mere memorandum.

The general proposition that any material alteration of a note will render it void cannot well be questioned.   The rule governing the subject of the alteration of writings has been stated in these terms: "Any material alteration in a written contract, made without the consent of the party sought to be charged thereon, at any time after its execution by him, renders it void as to him, even in the hands of an innocent holder."   The more recent statements of the rule confine it to changes made by a party to the writing or one claiming under him.   Notes, 10 Am. Dec. 267, 86 Am. St. Rep. 82.   A material alteration is one which makes the instrument speak a language different in

legal effect from that which it originally spoke; an alteration which produces some change in the rights, interests or obligations of the parties to the instrument. I Green. Ev. §565; Note, 86 Am. St. Rep. 86. An alteration in the date of a writing, if it results in altering the legal effect of the instrument, as by changing the day of maturity, is a material alteration. Wald's Pollock on Con. 861; 2 Cyc. 201. The date of a note ordinarily evidences the inception of the undertaking, fixes the time of payment, and determines the period of limitation; and when this is the case, any change in the date will impart to the note a new legal effect and operation. 2 Dan. Neg. Inst. §§1376, 1377; *Newman* v. *King*, 54 O. St. 273, 43 N. E. 683, 35 L. R. A. 471, 56 Am. St. Rep. 705; *Lisle* v. *Rogers*, 18 B. Mon. 528; *Miller* v. *Gilleland*, 19 Pa. St. 119.

But the plaintiff urges upon several grounds, that while a change in the date of a note may ordinarily be material, it cannot be so regarded in the circumstances of this case. The specific claims presented will be best stated and considered in connection with some reference to the cases.

In referring to the authorities upon this subject it is important to notice the relation sustained to the writing by the one making the alteration. In many of the cases the alteration was made by the payee of the note after its delivery. In other cases, as in the case submitted here, the alteration was made by one of several makers, after the note had been signed by others, and before it was delivered. In cases of the first class, the question manifestly relates to the effect of an alteration in a completed and existing contract. In cases of the second class it may be said, as to those who had previously signed, that the alteration comes in to prevent the completion of a contract, rather than to avoid a contract which has come into existence. This view is presented by the defendants, and will be found in the reasoning of several decisions. *Fay* v. *Smith,* 1 Allen 477, 79 Am. Dec. 752; *Draper* v. *Wood,* 112 Mass. 315, 17 Am. Rep. 92; *Blakey* v. *Johnson,* 13 Bush. 197, 26 Am. Rep. 254.

The argument of the plaintiff seems to raise the question whether Stephenson is to be regarded as a party to the writing within the meaning of the rule. Authorities are quoted which say that an alteration, to avoid an instrument, must be made by one who is entitled to some right or benefit under it, and that a joint promissor or maker is not such a party. Note, 17 Am.

Rep. 100; *Fullerton* v. *Sturges,* 4 O. St. 529. But the rule is generally taken to apply to any party to the instrument; and it has been specifically held in numerous cases that an alteration by one obligor or principal, without the consent of his co-obligor or surety, discharges the latter. 2 Cyc. 150, 151, 154; *Montgomery* v. *Crossthwait,* 90 Ala. 553, 24 Am. St. Rep. 832, 8 South. 498, 12 L. R. A. 140; *Britton* v. *Dierker,* 46 Mo. 591, 2 Am. Rep. 553; *Greenfield Sav. Bk.* v. *Stowell,* 123 Mass. 196, 25 Am. Rep. 67; *Goodman* v. *Eastman,* 4 N. H. 455; *Wood* v. *Steele,* 6 Wall. 80, 18 L. ed. 725. The writer of the note in 17 Am. Rep. 98, remarks that the case last cited was apparently not very well considered; but the decision has since been frequently cited by the state courts and been recognized as authoritative by the court which rendered it. *Mersman* v. *Werges,* 112 U. S. 139, 28 L. ed. 641, 5 Sup. Ct. 65. And in *Jones* v. *Banks,* 40 O. St. 139, 48 Am. Rep. 664, it was remarked that all that was said by the writer of the opinion in *Fullerton* v. *Sturges* on the law relating to a material alteration was *obiter.* It is only in the case of a note that has been delivered that it can properly be said that an alteration, to be destructive, must be made by, or by the authority of, one who takes some benefit under it.

It is now almost universally held that the alteration of a written instrument by a stranger will not render it void; but courts have had some difficulty in determining who shall be considered a stranger. There is a class of cases where a note is procured by an agent, delivery to whom is delivery to the payee, but whose subsequent authority is limited to the custody and transmission of the writing; and alterations made by these persons are treated as the acts of a stranger. In this class are *Bigelow* v. *Stilphen,* 35 Vt. 521; *Equitable Mfg. Co.* v. *Allen,* 76 Vt. 22, 56 Atl. 87, 104 Am. St. Rep. 915. The plaintiff claims that Stephenson had authority as agent of the other defendants to change the date, and claims further that if he had no such authority his act was the act of a stranger and of no effect.

There is nothing in the relation ordinarily existing between the principal makers of a note, or between principal and surety, that authorizes one to change the writing after it has been signed by the other. Note, 86 Am. St. Rep. 107. No authority to alter will be presumed from the mere fact that one. leaves the note with the other to be delivered. *Blakey* v. *Johnson,* 13 Bush.

197, 26 Am. Rep. 254.   And it is said in general terms in the note above cited, that no agency to alter will be implied from any other agency, special in its nature.   See *Walsh* v. *Hunt*, 120 Cal. 46, 52 Pac. 115, 30 L. R. A. 697.   No special argument is made in support of the claim of agency; and the question is apparently advanced for decision to clear the ground for the further claim that if Stephenson had no authority to make the change his act was the act of a stranger and left the note unimpaired.

This further claim is based upon the fact that by the terms of the note each signer assumed the liability of a principal. It is said that each of the other principals left the note with Stephenson to be delivered to the Bank, and that as regards that purpose his relations to the note and to the other principals were the same as they would have been in the case of an ordinary messenger.   This cannot be so.   Stephenson was a party to the note, and was holding it for delivery for himself as well as for the others.   The other signers intrusted it to his possession in his capacity as co-maker, and his acts in connection with that possession cannot be accounted the acts of a stranger.

But the plaintiff claims that the change of date in this instance was an immaterial alteration, because its effect was simply to make the note conform to what all the makers intended it to be.   The courts of several states recognize the doctrine that there may be special circumstances from which the law will imply an authority to alter.   Note, 86 Am. St. Rep. 116.   The cases are mostly those of alterations by the promisee; and the alterations are generally justified upon the ground that they were made to correct a mistake and thus make the writing conform to the intention of the parties.   These alterations have included the correction of mistakes in the date, the completion of defective statements of the amount of the debt and the period of credit, and the correction of errors in the name of the payee. Among the cases of the latter class is *Derby* v. *Thrall*, 44 Vt. 413, 8 Am. Rep. 389.   There the payee of a note who was known to both debtor and surety, and to whom the surety understood the note was being given, was commonly called Frank, and the debtor had him designated as Franklin in the note as drawn, supposing that to be his first name.   His name was in fact Francis E., and the debtor permitted him to alter the note in that respect on receiving it.   The court treated this as an im-

material alteration.   See also *Ames* v. *Colburn,* 11 Gray 390, 71 Am. Dec. 723; *Duker* v. *Franz,* 7 Bush. 273, 3 Am. Rep. 314; *Boyd* v. *Brotherson,* 10 Wend. 93; *Connor* v. *Routh,* 7 How. (Miss.) 176, 40 Am. Dec. 59; *Cole* v. *Hills,* 44 N. H. 227.

The plaintiff argues that the change made here simply carried out the understanding of the makers, and that the case is within the holding in *Derby* v. *Thrall.*   Six of the defendants were signers on the old note; and their purpose in signing the note in suit was not to create a new obligation, but to continue an old one.   They knew that this was to be done through an exchange of one note for another, and must have expected that the business would be so transacted as to maintain a continuous liability.   This implied that the new note was to be so framed as to commence where the former note ended, and not be such as to show a duplication of interest for a six months' period.   The note as originally prepared was drawn to correspond with the situation as it then existed—with the June interest day past and the interest paid.   During the delays incident to procuring the signatures of the required number, another interest day passed and the additional six months' interest was paid; and the date of the note was changed to correspond with the altered situation.   The change was not the correction of a mistake, for there was no mistake in the date as first entered.   The same considerations which determined the date in the first instance called for the subsequent change.   This change in the date, in connection with the payment of six months' interest, exactly maintained the situation which these six defendants contemplated when they signed the note.

The cases above referred to doubtless afford some support to the plaintiff's contention regarding these matters, as applied to the six defendants.   But the decisions of other courts of equal authority deny the right of one party to a writing to alter it, even though the alteration makes it conform to the understanding of all the parties.   If we were to sustain the claim of an implied authority upon the case presented, it would greatly extend the application of the rule adopted in *Derby* v. *Thrall.* But we are not called upon to determine this question, for it is obvious that the above reasoning has no application to the three defendants who were not parties to the first note, and no point was made in the court below which suggested any ground of recovery not applicable to all the signers.   No claim was

made to the court in any form at any stage of the trial that left room for the theory that there might be a recovery against some of the nine defendants and not against all. The charge of the court, in treating the right to alter as depending upon consent, evidently referred to consent in fact and not by implication of law.

The plaintiff also contends that the change in the date is immaterial because it in no way altered the rights or liabilities of the parties. It is argued that the course of the transaction was such that the change did not affect the operation of the statute of limitations. The note was not completed as to the signatures and delivered to the Bank until March tenth, more than three months subsequent to the date of the note as altered. It is said that the date of the delivery was the first day when suit could have been brought on the note, and that it was this that determined the expiration of the period of limitation, and not the change in the date. It is not necessary to take up the inquiry in this form. It is true that Stephenson would have had the right to deliver the note when he did if nothing more than the delay had intervened. But this writing had ceased to be, or had failed to become, the note of the defendants, because of the alteration, before the delivery was made.

It is said further that while the change might, in one possible contingency, have deprived defendants of the defense of the statute, as it is they have suffered and can suffer no possible harm from it. This argument fails to recognize the true import of the rule. Any alteration which may in any event alter the rights, duties or obligations of the party sought to be charged is material in the legal sense. It is enough that in some circumstances which might have supervened the alteration might have been prejudicial. *Woodworth* v. *Bank of America,* 19 Johns. 331, 418, 10 Am. Dec. 239; *Miller* v. *Gilleland,* 19 Pa. St. 119, 124; *Soaps* v. *Eichberg,* 42 Ill. App. 375. Moreover, the authorities are practically unanimous in holding that the question whether the alteration was beneficial or prejudicial to the party not consenting, is immaterial. *Mahaiwe Bank* v. *Douglass,* 31 Conn. 170; *Gardner* v. *Marsh,* 5 El. & Bl. 83.

It is claimed that the alteration, if material, will not prevent a recovery because it was made with an honest purpose and intent. There are cases which hold that an alteration made by a payee through some misunderstanding and for an

honest purpose will not bar his recovery, if the original language of the instrument remains perfectly legible. But the great weight of authority sustains the general proposition that a material alteration will avoid the instrument, although innocently made. 2 Smith's Lead. Cas. 9th Am. Ed. 1153; *Green* v. *Sneed,* 101 Ala. 205, 13 South. 277, 46 Am. St. Rep. 119; *Aldrich* v. *Smith,* 37 Mich. 468, 26 Am. Rep. 536; *Eckert* v. *Pickel,* 59 Iowa 545, 13 N. W. 708; *Davis* v. *Epplier,* 38 Kan. 629, 16 Pac. 793.

In this State it is presumed in the first instance that all alterations in an instrument were made before or at the time of its execution, and the plaintiff argues that it was not in fault in relying on this presumption· and accepting the note. But this presumption was not conclusive, and could not be relied upon as a protection when the time of the alteration was questioned in evidence. It could better be said, as is claimed by the defendants, that the plaintiff was put upon inquiry by the appearance of the note. The Bank must have known that the change in the date afforded an opportunity for raising some question regarding the note, and it cannot well urge its good faith to establish the validity of the instrument.

Plaintiff claimed a ratification of the change by some of the defendants, including Tillotson, at a certain interview at the Bank. Tillotson was called as a witness for the defense, and testified as to the time when and the circumstances under which he signed the note. In cross-examination, and without objection, he produced a letter received from the Bank, and testified that he went to the Bank at the time named in the letter, but that he went at Stephenson's request, and not in response to the demand for payment. He was then asked whether he did not understand that he was called upon to pay the note, and whether the letter that he had received from the Bank had something to do with his going there; which questions were severally objected ·to, and were excluded with the suggestion that the inquiry had better be had in connection with the plaintiff's case in rebuttal. This disposition of the matter was within the court's discretion.

This specifically disposes of or sufficiently covers all the points relied upon. The plaintiff's motion for a verdict was

properly overruled, and the case was correctly submitted upon evidence properly received.

*Judgment affirmed.*