FRANK W. FOWLER *v.* CHARLES C. BARLOW ET UX.

February Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed May 8, 1929.

*Frank E. Barber* for the plaintiff.

*Carpenter & Clawson* and *Richard E. Gale,* of counsel, for the defendants.

MOULTON, J.  This is a petition in equity to foreclose a mortgage on real estate.  The defendants have filed an answer in which they say that they were sureties or guarantors only, and that they are discharged from liability because there has been a material alteration of the note without their knowledge or consent; because the statute of limitations has run on the note and mortgage; and because Leray Fowler, one of the makers of the note, died leaving an estate sufficient to pay the note in full, but the plaintiff made no attempt to collect the amount, and the estate has been disposed of.

A hearing was had before the chancellor, who has found the following facts: The mortgage originally covered several different parcels of land, some of which were owned by Charles Barlow, and some by his wife, Alice Barlow. The mortgage is dated January 4, 1909, and is conditioned for the payment of a promissory note for $1,000 payable to the order of the plaintiff, and signed by Leray J. Fowler and John S. Fowler. The defendants are not signers or indorsers of the note. They gave the mortgage for the sole purpose of enabling the makers to procure the amount from the plaintiff, and no part of the money accrued to their benefit.

Payments on the note were made from time to time by the makers. The last payment was made by John S. Fowler, one of the makers, on August 16, 1927, and was in the sum of $25. It was made in the presence of defendant Charles C. Barlow. On January 10, 1912, Charles Barlow loaned $200 to John Fowler, so that the latter might pay the same on the note, on an agreement between Barlow and the plaintiff that upon such payment the plaintiff would release from the mortgage a certain piece of real estate, belonging to Barlow. The release was accomplished by a quitclaim deed. In the same manner, on May 1, 1914, Barlow loaned $250 to John Fowler, which was paid on the note, to release another piece of real estate belonging to Barlow. This left the property owned by Alice Barlow the only real estate covered by the mortgage. All belonging to Charles Barlow had been released. Alice Barlow had nothing to do with the release.

In 1927 the plaintiff began pressing for payment of the note, and verbal negotiations took place, with the approval of Alice Barlow, between Charles Barlow and the plaintiff, whereby a new mortgage and note should be substituted for these already in existence. But these negotiations came to nothing.

On March 25, 1914, the plaintiff wrote across the end of the note words to the effect that from that time on interest should be at the rate of 5%, but the chancellor is unable to find on the evidence whether, as the plaintiff claims, this was at the suggestion of Charles Barlow.

Leray Fowler deceased in June, 1921, leaving an estate not exceeding the amount necessary to pay the expenses of his last sickness and funeral.

A decree was entered for the defendant, and the plaintiff has appealed.

Since the note was made and delivered before the Negotiable Instruments Act took effect, its provisions do not apply. G. L. 3059.

One who pledges or mortgages his property to secure the debt of another, without becoming personally bound for the payment, is, as to that debt, a surety. *Jangraw* v. *Perkins,* 79 Vt. 107, 109, 110, 64 Atl. 449; *Cross* v. *Allen,* 141 U. S. 528, 534, 35 L. ed. 843, 12 Sup. Ct. 67; *Eberhart* v. *Eyre-Shoemaker, Inc.,* 78 Ind. App. 658, 134 N. E. 227, 229; *Gahn* v. *Niemcewicz,* 11 Wend. (N. Y.) 312, 328; *Bank of Albion* v. *Burns,* 46 N. Y. 170, 174, 175; *Fleming* v. *Barden,* 126 N. C. 450, 36 S. E. 17, 53 L. R. A. 316, 78 A. S. R. 671; *Id.,* 127 N. C. 214, 37 S. E. 219, 53 L. R. A. 316, 326; 21 R. C. L. 949. It is sometimes said that, in such a situation, it is the property pledged or mortgaged that stands in the position of a surety. *Mechanics' Bank* v. *Comins,* 72 N. H. 12, 55 Atl. 191, 196; 101 A. S. R. 650; *Price* v. *Reed,* 124 Ill. 317, 15 N. E. 754, 7 A. S. R. 367; *In re Blanchard* (C. C. A.), 253 Fed. 758, 765.

The defendants insist that the notation placed upon the note by the plaintiff constituted a material alteration thereof, and, as such, not only avoided it as against the makers, but operated to discharge the sureties from their obligations, under the rule in *Gray* v. *Williams,* 91 Vt. 111, 117, 118, 99 Atl. 735, and *Barton Savings Bank & Trust Co.* v. *Stephenson,* 87 Vt. 433, 444, 89 Atl. 639, 51 L. R. A. (N. S.) 346.

But it is not necessary to decide whether there was a material alteration of the note in this instance. Assuming it to be so, the mortgage is not necessarily invalidated. Where such an alteration is made without fraudulent intent, although the note may be avoided, the debt is not discharged, and a recovery may be had upon the original consideration. *Keene* v. *Weeks,* 19 R. I. 309, 33 Atl. 446, 447; *Jeffrey* v. *Rosenfeld,* 179 Mass. 506, 508, 61 N. E. 49; *Owen* v. *Hall,* 70 Md. 97, 16 Atl. 376, 378; *Clute and Bailey* v. *Small,* 17 Wend. (N. Y.) 238, 242-243.

In *Bigelow* v. *Stilphen,* 35 Vt. 521, 525, it was said that whether a material alteration of a promissory note works a forfeiture of the debt, so that there can be no recovery by the party making such alteration for the original consideration,

was a question upon which the authorities were not entirely harmonious, but that the weight of authority seemed to be in favor of the position that in such case there could be no recovery for the original consideration. However, since the action in that case was upon the note itself, what was thus said was obiter; and, besides, it is clear that the Court failed to distinguish between alterations innocently made and those made with fraudulent intent, because it was said that the object of the rule was to deter holders of written instruments from attempting to commit frauds upon the signers by altering them. In Gray v. Williams, 91 Vt. 111, 120, 99 Atl. 735, 739, in speaking of an alteration, the Court said: "We are not now concerned with plaintiff's right to recover on the original consideration, for this is a suit declaring upon the note alone," thus recognizing that, in a proper case, such recovery might be had.

It follows that the material alteration of a mortgage note, if not fraudulent, will not avoid the mortgage, which will still remain a valid security for the original consideration. Jeffrey v. Rosenfeld, supra, at page 509 of 179 Mass. (61 N. E. 49); Walton Plow Co. v. Campbell, 35 Neb. 173, 52 N. W. 883, 16 L. R. A. 468, 470; Smith v. Smith, 27 S. C. 166, 3 S. E. 78, 13 A. S. R. 633, 635; Williston on Contracts, par. 1912. The rule is thus stated in Vogle v. Ripper, 34 Ill. 100, 85 A. D. 299, 300.

"In a court of equity a mortgage is regarded as an incident of the debt, and where a mortgagee has released or discharged the debt by a fraudulent alteration or destruction of the written evidence of it, he ought not to be permitted to sustain a suit for its recovery; but where the alteration was not fraudulent, although the identity of the instrument may be destroyed, we think it should not cancel a debt, of which the instrument was merely evidence. If there was no intent to defraud, there is no reason why a court should not assist the creditor as far as it can consistently."

This principal was applied, in Edington v. McLeod, 87 Kan. 426, 124 Pac. 166, 41 L. R. A. (N. S.) 230, 235, Ann. Cas. 1913E, 315, to a situation similar in its legal aspect to the one presented here. A wife joined with her husband in a mortgage to secure the husband's note. The note was materially, though innocently, altered by the holder, after execution and delivery.

It was held that the wife was in the position of a surety, but, since there was no fraudulent intent, the mortgage was not invalidated, although the note itself was rendered void. See also *Cheek* v. *Nall*, 112 N. C. 370, 17 S. E. 80, 81.

Plainly, there is here no intent to defraud. There is no finding of such a fact, and we cannot supply this material element by inference. *Manley Bros. Co., Inc.* v. *Somers*, 100 Vt. 292, 297, 137 Atl. 336. Neither can we presume the existence of fraud. *Colston* v. *Bean*, 78 Vt. 283, 285, 62 Atl. 1015. Even if there were such a presumption, it would be rebutted by the fact that the change was to a lower rate of interest than that specified, and consequently against the interest of the plaintiff and to the advantage of the makers. *Keene* v. *Weeks, supra*. We hold, therefore, that the mortgage was not affected by the act of the plaintiff in making the notation upon the margin of the note.

We pass now to the defense of the statute of limitations. The right of entry under a mortgage is barred by a continued interruption and ouster for the term of fifteen years. *Richmond* v. *Aiken*, 25 Vt. 324, 326. Courts of equity act upon the analogy of the statute of limitations, and will presume payment and satisfaction of a mortgage debt after the lapse of fifteen years, unless something has intervened to take the case out of the statute, or to repel the presumption of payment resulting from the lapse of time. *Martin* v. *Bowker*, 19 Vt. 526, 527. The interruption or ouster ceases upon the acknowledgment of the title of the mortgagee by the owner of the equity of redemption. *Richmond* v. *Aiken, supra*. ''The payment of interest upon the debt, or any portion of the principal by the defendant, or any other act recognizing the existence of the mortgage, and that the same is unsatisfied and is obligatory upon him, will be sufficient to repel the presumption of payment and take the case out of the operation of the statute.'' *Martin* v. *Bowker, supra; Hollister* v. *York*, 59 Vt. 1, 4, 9 Atl. 2; *Kendall* v. *Tracy et al.*, 64 Vt. 522, 525, 24 Atl. 1118.

The obligation of the defendants as sureties arose when the note was unpaid at maturity. At that moment the time by which the plaintiff's right of entry would be barred, if his title should not be acknowledged by the defendants, commenced to run. Although the period of limitation upon the right of action against the Fowlers upon the note was six

years, that of the right of entry against the defendants under the mortgage was fifteen years. *Martin* v. *Bowker, supra.* Payments upon the note, whether of principal or interest, by the makers, without the participation of the sureties, while ,serving to keep the note alive as against the former, would not affect the running of the time as against the latter. *Green* v. *Morris,* 58 Vt. 35, 37, 4 Atl. 561; *McConnell* v. *Merrill,* 53 Vt. 149, 155, 38 A. R. 663; *Homewood Bank* v. *Hastings,* 263 Pa. 260, 106 Atl. 308, 310; *Homewood Bank* v. *McCutcheon,* 266 Pa. 116, 109 Atl. 873; *White* v. *Pittsburgh Vein Coal Co.,* 266 Pa. 145, 109 Atl. 873, 875; *Smith* v. *Dowden,* 92 N. J. Law, 317, 105 Atl. 720, 721; *Newell* v. *Clark,* 73 N. H. 289, 61 Atl. 555, 556; *Carpenter* v. *Thompson,* 66 Conn. 457, 34 At. 105, 106, 107; *Gardiner* v. *Nutting,* 5 Greenl. (Me.) 140, 17 A. D. 211, 213.

It is not claimed that the payment made by John Fowler in 1927 in the presence of Charles Barlow, had any effect as against the latter, but it is argued that the two payments of 1912 and 1914, respectively, were such as to repel the presumption of payment and to take the case out of the operation of the statute.

With regard to the two payments mentioned, the chancellor has found that in 1912 Barlow loaned to John Fowler the sum of $200 so that he might pay the same to the plaintiff under an agreement between the plaintiff and Barlow that, upon such payment, the plaintiff would release from the mortgage a certain piece of land owned by Barlow. Barlow saw that the money was paid. The plaintiff quitclaimed the property, in accordance with the agreement, and the deed recited "in consideration of two hundred dollars paid to my full satisfaction by Charles C. Barlow." The same transaction took place in 1914 when $250 was paid and the balance of Charles Barlow's real estate was released from the mortgage.

The money loaned by Barlow to John Fowler belonged, so far as the payments were concerned, to the latter. But it is not necessary that the payment should be made from the funds of the party making it. *McConnell* v. *Merrill,* 53 Vt. 149, 155, 38 A. R. 663. "The true question is not where did the money come from, but who voluntarily intended to make a payment?" *Green* v. *Morris,* 58 Vt. 35, 37, 4 Atl. 561, 563. The money was

paid by the procurement of Barlow, pursuant to an agreement previously made by him with the plaintiff; it was done under his supervision, and for his benefit. The language of the quit-claim deeds shows that the plaintiff understood the payments to be made by Barlow; and we think that the intention of Barlow to this effect is clear. *McConnell* v. *Merrill, supra; Green* v. *Morris, supra.*

It is contended that, although the payments may have been made by Charles Barlow, they had no effect upon the rights of Alice Barlow, his wife, whose property was covered by the mortgage. But this property was not held to her sole and separate use, and her husband had an interest therein, and, consequently, was interested in the equity of the redemption. *Gay's Estate* v. *Hassom,* 64 Vt. 495, 501, 24 Atl. 715. Where there are several persons interested in the equity of redemption, a payment by one of them, to apply upon the principal or interest of the mortgage debt, keeps alive the right of entry not only against him, but also against all other owners of the equity. *Hollister* v. *York,* 59 Vt. 1, 4, 9 Atl. 2; *Gay's Estate* v. *Hassom, supra.*

The statute, G. L. 1869, relating to a payment by one of several joint contractors does not apply. That statute refers to parties who have incurred personal liability, and has no reference to a right of entry upon real estate. The effect of the mortgage was to convey the premises conditionally, and the right of entry of the mortgagee could be defeated only by actual payment of the mortgage debt, or by lapse of time sufficient to raise a presumption of payment. *Gay's Estate* v. *Hassom, supra.* We hold that the right of entry in this case was not barred by lapse of time.

The defendants claim that since nothing appears in the record to show that any legal remedies have been taken against John Fowler or that he has become insolvent, this suit cannot be maintained. But this point is not an issue in the case. The answer alleges that the estate of Leray Fowler was sufficient to pay the note, but that the plaintiff took no steps to enforce collection. The facts found are contrary to his contention, and the defendants make no claim concerning it. Since the situation with regard to John Fowler was not made an issue below, the question is not before us.

In view of what we have said, it is not necessary to consider the exception taken by the plaintiff to the findings of the chancellor.

*Decree reversed, and cause remanded, with directions that a decree be entered for the plaintiff, and the amount due under the mortgage ascertained, and the time of redemption fixed.*